PER CURIAM.
¶1 Damian Berg appeals an order of the circuit court dismissing on summary judgment his medical negligence claim against Dr. Bradley Maxfield. Berg contends that the circuit court should have given him additional time to investigate Dr. Maxfield's liability and permission to name an additional expert before ruling on Dr. Maxfield's summary judgment motion. For the reasons explained below, we affirm.
BACKGROUND
¶2 The following facts are taken from the summary judgment submissions and are undisputed. In May 2011, Berg, who had been suffering from urinary tract infections and blood in his urine, underwent a bladder imaging procedure known as a voiding cystourethrogram (VCUG) at the direction of Dr. Maxfield, a pediatric radiologist at the University of Wisconsin Children's Hospital, to rule out abnormality and vesicoureteral reflux. During a VCUG, a double-lumen (two channel) Foley catheter is inserted into the patient's bladder and, through one of the lumen, a balloon on the catheter is inflated inside the bladder to prevent the catheter from sliding out of the patient's urethra. A sterile radiographic contrast is then injected through the other lumen into the patient's bladder. X-ray images of the bladder are taken as the bladder fills with the contrast and after the bladder is full. After all necessary images are taken, the balloon on the Foley catheter is deflated and the patient voids his or her bladder, at which time additional images are taken. As the patient voids, the catheter comes out of the patient's urethra.
¶3 Dr. Maxfield interpreted ultrasound images of Berg's bladder that were taken prior to the 2011 VCUG. Dr. Maxfield's medical notes from the day of the 2011 VCUG describe those images as "unremarkable." Dr. Maxfield also interpreted images of Berg's bladder taken during the VCUG procedure. Dr. Maxfield's medical notes do not identify anything abnormal in those images.
¶4 Berg continued to suffer from urinary tract problems following the May 2011 VCUG and, in April 2014, he was seen by Dr. Andrew Maes, a urologist. Dr. Maes ordered an ultrasound of Berg's bladder, which he found showed a "possible bladder mass." On May 19, 2014, Dr. Maes performed a cystoscopy on Berg and removed approximately six centimeters of plastic tubing from Berg's bladder. Dr. Maes was unable to remove all the plastic tubing during the cystoscopy, and in August 2014, Dr. Horace Lo surgically removed the remainder of the plastic tubing from Berg's abdominal wall. Following the August surgery, Berg's urinary tract problems resolved.
¶5 In October 2014, Berg commenced the present negligence action by filing a complaint against the University of Wisconsin Medical Foundation, Inc. and nurse practitioner Ann Byrne. In February 2015, Byrne and the Medical Foundation were dismissed from the case by joint stipulation, and Berg filed an amended complaint against Dr. Maxfield, the University of Wisconsin Hospital and Clinics Authority (UWHCA); and Devon Christenson, a nurse practitioner. The allegations as to wrongdoing set forth in the amended complaint were substantially the same as the allegations set forth in the original complaint. Berg alleged that on or about May 3, 2011, he received treatment at the American Family Children's Hospital under the direction of Dr. Maxfield and Christenson, that during his treatment a Foley catheter was placed and removed and a VCUG was performed, that Dr. Maxfield and Christenson were negligent in providing care and treatment to Berg, that their negligence was not discovered until May 2014, and that as a result of their negligence, Berg suffered severe and traumatic injuries.
¶6 Berg filed a second amended complaint against Dr. Maxfield, and Christenson and the UWHCA were dismissed from the lawsuit. The second amended complaint contained allegations of wrongdoing identical to the allegations of wrongdoing set forth in the original and amended complaints.
¶7 The circuit court entered a scheduling order in December 2015, without objection. The scheduling order required that any amended pleadings by Berg be filed with the court by January 15, 2016, and that Berg identify any expert witnesses by April 1, 2016. On April 4, Berg identified Drs. Maes and Lo as his expert witnesses.
¶8 Dr. Maxfield was deposed in April 2015 and again in January 2017. During the April 2015 deposition, Dr. Maxfield described what "normally" occurs during a VCUG and the medical apparatus, including the Foley catheter, used during that procedure. The only questions Dr. Maxfield answered that were specific to Berg related to images taken after the Foley catheter had been inserted into Berg's bladder.
¶9 During the January 2017 deposition, Dr. Maxfield testified that he had reviewed images of Berg's bladder taken prior to the 2011 VCUG and that he could see in those images the plastic tubing that was later removed by Drs. Maes and Lo. Dr. Maxfield testified that he did not notice the tubing at the time of the 2011 VCUG because nothing in Berg's medical history had alerted him to be on the lookout for any such abnormality. After inspecting a fragment of the tubing removed from Berg by Dr. Lo, Dr. Maxfield also testified that the plastic tubing was different than the Foley catheter used during the VCUG. Dr. Maxfield testified that the removed tubing was a single lumen, there was no indication of a second lumen to feed a balloon on the removed tubing, and the removed tubing was made of a "stiff[er]" plastic than in the Foley catheter used during the VCUG.
¶10 Drs. Maes and Lo were also deposed in January 2017. Dr. Maes testified about his removal of a portion of the tubing retained in Berg's bladder, and about the tubing itself. Dr. Maes testified that the tubing inside Berg's bladder "appeared to be at least 18 inches, perhaps longer," which is "longer than [a] classic Foley catheter." Dr. Maes testified that the portion of tubing he removed from Berg's bladder "is different than [a] Foley catheter" in that unlike a Foley catheter, it was "unusually hard" and the tubing did not have an end like a Foley catheter. Dr. Maes also testified that a Foley catheter is always at least a double lumen.
¶11 Dr. Lo testified about the August 2014 surgical procedure to remove the remaining retained tubing and stated that at no time during his treatment and care of Berg did he "form [an] opinion to a reasonable degree of medical certainty that" the foreign object he removed from Berg's abdominal wall was a Foley catheter.
¶12 On March 2, 2017, Dr. Maxfield moved the circuit court for summary judgment. On April 3, Berg filed a brief in response, arguing that the motion "should be held in abeyance" until Berg had time to assess Dr. Maxfield's liability in light of Dr. Maxfield's January 2017 deposition testimony that the plastic tubing was in Berg's bladder and abdominal wall before the 2011 VCUG. On that date, Berg also moved the court for permission to name an additional expert in light of Dr. Maxfield's January 2017 deposition. The circuit court granted Dr. Maxfield's motion for summary judgment. Berg appeals.
DISCUSSION
¶13 Berg contends the circuit court erred in granting Dr. Maxfield's motion for summary judgment. We review a circuit court's decision to grant or deny summary judgment de novo, using the same methodology as the circuit court. Hardy v. Hoefferle , 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT . § 802.08(2) (2015-16).[1] Stated another way, the legal standard is whether there are any material facts in dispute that entitle the non-moving party to a trial. Lambrecht v. Estate of Kaczmarczyk , 2001 WI 25, ¶ 24, 241 Wis. 2d 804, 623 N.W.2d 751.
¶14 Berg's arguments as to why the court erred in granting summary judgment are difficult to follow. Berg's primary argument appears to be that "fairness dictates" that the circuit court should not have ruled on Dr. Maxfield's summary judgment motion because his original theory of liability, that Dr. Maxfield was negligent in leaving a piece of the Foley catheter used in the 2011 VCUG inside Berg's bladder, was "turn[ed] ... on its head" when Dr. Maxfield testified at his 2017 deposition that, after reviewing the pre-VCUG images of Berg's bladder to refresh his memory for his deposition, he could see in the images the plastic tubing later removed by Drs. Maes and Lo. Berg concedes that after Dr. Maxfield's January 2017 deposition, Dr. Maxfield can be liable only if "the average radiologist [should] reasonably have seen [the] tubing, interpreted it properly, and had [the tubing] removed ... years earlier than it was."
¶15 Berg argues that his original theory of liability was supported by: (1) Dr. Maxfield's medical notes on the 2011 VCUG that images taken of Berg's bladder prior to the 2011 VCUG were "unremarkable"; (2) Dr. Maes's medical notes indicating a preoperative diagnosis on May 28, 2014, of a "[r]etained foreign body. A retained Foley catheter"; and (3) Dr. Maxfield's failure to testify during his April 2015 deposition that the removed tubing could be seen in Berg's pre-VCUG images. He argues that, in light of the evidence supporting his original theory, the change in the theory of liability constitutes a "special circumstance[ ]" warranting additional "time [for Berg] to properly evaluate this new proof" and to identify an additional expert.
¶16 "Wisconsin circuit courts have inherent power, within the limits of their discretion, to control their dockets." Parker v. Wisconsin Patients Comp. Fund , 2009 WI App 42, ¶ 9, 317 Wis. 2d 460, 767 N.W.2d 272. See WIS. STAT. § 802.10. Berg fails to cite this court to any legal authority supporting his claim that the circuit court erred in failing to wait an indeterminate amount of time for Berg to further investigate his case before ruling on Dr. Maxfield's summary judgment motion or that the court erroneously exercised its discretion when it failed to grant Berg's motion to name a new expert well past the scheduling deadline. This court does not address arguments unsupported by legal authority. State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). In addition. Berg fails to offer a reasonable explanation as to why he did not discover sooner that the plastic tubing removed from his bowel and abdomen in 2014 was not part of the catheter used by Dr. Maxfield during the 2011 VCUG. Berg's own expert, Dr. Maes, testified at his deposition that the plastic tubing was not part of a Foley catheter, which was the catheter used by Dr. Maxfield during the 2011 VCUG, and Dr. Lo testified that he did not believe the removed tubing was part of a Foley catheter. Berg does not explain: (1) why he was surprised by the deposition testimony of his own named experts; (2) what steps he took to discover that information; (3) why he was unable to discover that information before January 2017; or (4) why, following the January 2017 depositions, he took no immediate action in light of his change of theory, and instead waited until after the summary judgment motion was before the circuit court.
¶17 Accordingly, we reject Berg's argument that the court erroneously exercised its discretion by failing to allow him additional time to investigate his case before ruling on Dr. Maxfield's summary judgment motion.
¶18 Berg also appears to be arguing that summary judgment was not appropriate because there are material facts in dispute. Berg asserts: "Material factual issues exist based upon ... Dr. Maxfield's own testimony." Berg does not explain what the material facts are, nor does he identify what portions of Dr. Maxfield's deposition testimony he is referring to. To the extent that Berg is arguing that because Dr. Maxfield testified in his January 2017 deposition that the plastic tubing removed from Berg's bladder and abdomen in 2014 is shown in the images of Berg's bladder taken prior to the 2011 VCUG, but did not testify as to that at his April 2014 deposition, a factual dispute exists as to whether the plastic tubing was left in Berg's bladder by Dr. Maxfield in 2011, we are not persuaded.
¶19 The summary judgment submissions strongly indicate that the plastic tubing removed from Berg in 2014 was not part of the catheter used by Dr. Maxfield in the 2011 VCUG. Dr. Maxfield testified that he used a Foley catheter during the 2011 VCUG, that a Foley catheter is a double lumen catheter, that the removed tubing was single lumen, and that the removed tubing was made of a different, "stiff[er]" plastic than the tubing used in a Foley catheter. Dr. Maes testified that the retained tubing appeared to be "at least 18 inches, perhaps longer," which is "longer than [the] classic Foley catheter." Dr. Maes also testified that when he stated "Retained foreign body. Retained Foley catheter," in his medical notes, he was not referring to the "[r]etained foreign body" as a Foley catheter, rather he was "saying [Berg] has a retained foreign body and a retained Foley catheter that was inserted by [Dr. Maes]." Further, Dr. Maes testified that the retained tubing "is not a type of Foley catheter that [he is] familiar with" and that it was his "belief that the strict definition of a Foley catheter is not met by" the retained tubing. Finally, Berg acknowledges on appeal that he has abandoned that theory of liability and that the only theory of liability by which Dr. Maxfield could be liable is one in which he was negligent for not identifying the plastic tubing at the time of the 2011 VCUG.
¶20 To the extent that Berg is arguing that a factual dispute exists as to whether Dr. Maxfield was negligent in failing to identify the retained tubing at the time of the 2011 VCUG, we are also not persuaded. Berg does not point this court to any facts upon which a jury could reasonably make such a finding, and we did not find any such facts during our independent review of the summary judgment submissions.[2]
CONCLUSION
¶21 For the reasons discussed above, we affirm.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Dr. Maxfield argues that summary judgment was also appropriate because Berg did not move to amend his complaint to assert a claim of negligence relating to Dr. Maxfield's failure to identify at the time of the 2011 VCUG the plastic tubing retained in Berg's bladder. Because our decision above is dispositive, we do not address this issue. See Sweet v. Berge, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983). In addition, for reasons mentioned in our discussion, above, we affirm the circuit court's implicit denial of Berg's motion to name additional experts.