Priscilla PARKER, Plaintiff-Appellant,†

MEDICARE PARTS A & B and Rock County,
Subrogated-Plaintiffs,

v.

WISCONSIN PATIENTS COMPENSATION FUND,
Karin Blumofe, M.D. and Physicians Insurance
Company of Wisconsin, Inc.,
Defendants-Respondents,

BELOIT CLINIC, S.C. and Injured Patients &
Families Compensation Fund, Defendants.

Court of Appeals

*No. 2007AP1542. Submitted on briefs January 14, 2008.
—Decided March 19, 2009.*

2009 WI App 42

(Also reported in 767 N.W.2d 272.)

† Petition to review denied 7/15/09.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Paul Gagliardi* and *Frank Gagliardi* of *Gagliardi Law, LLP*, Salem.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *David E. McFarlane* and *Sheila M. Sullivan* of *Bell, Gierhart & Moore, S.C.*, and *Barrett J. Corneille, Colleen L. Meloy* and *David J. Pliner* of *Corneille Law Group, LLC*, Madison.

Before Higginbotham, P.J., Dykman and Lundsten, JJ.

¶ 1. HIGGINBOTHAM, P.J. Priscilla Parker brought this medical malpractice action against Dr. Karin Blumofe alleging that Blumofe negligently performed a vascular bypass procedure and was negligent in providing post-operative care, resulting in permanent injuries including amputation of her lower left leg. A jury returned a verdict in favor of Blumofe, and Parker appeals the judgment dismissing her claims. Parker contends that Blumofe's key expert witness, Dr. Alan Koslow, should not have been allowed to testify because Blumofe failed to name Koslow as her expert by the time established under a pretrial scheduling order, and did not demonstrate that her failure to timely name Koslow was the result of excusable neglect. Parker further contends that the circuit court erred in: (1) permitting Koslow to provide testimony at trial that was inconsistent with pretrial disclosures; (2) allowing Blumofe to offer opinion testimony at trial after she had refused to offer opinion testimony during discovery; and (3) excluding the deposition testimony of one of Parker's experts, Dr. Jon Wesley. We affirm.

## BACKGROUND

¶ 2. In July 2001, Priscilla Parker sought medical treatment for circulation problems at Beloit Clinic, S.C. Dr. Karin Blumofe, a general surgeon, diagnosed Parker with peripheral vascular disease. Blumofe performed an aortic bypass to improve Parker's circulation to her extremities. Additional facts about the surgery and relevant expert witness testimony are presented in the discussion section.

·¶ 3. After the surgery, Parker continued to have vascular problems. An angiogram revealed that the graft was blocked off on the left side. Parker was treated with TPA, a blood thinning therapy used to treat clots. Blumofe testified at trial that she did not favor performing a new bypass operation at the time because Parker's surgical incision was still open and infected. Blumofe testified that she observed gradual improvement in Parker's condition until her release about seven weeks after the surgery. Parker was readmitted three days later, however, with numbness in her legs and an inability to use her legs. Parker's condition deteriorated; a nurse's note states that pedal pulses could not be detected and her left leg was mottled in appearance below the knee.

¶ 4. Approximately a week after Parker was readmitted, she was transferred to Fort Atkinson Nursing Home, which transferred her later that day to UW Hospital. Both of Parker's feet were cold and no pulse was detected in them, and both of her lower legs were mottled. Four days later, Dr. William Turnipseed surgically amputated the lower half of Parker's left leg, and amputated a toe on her right foot.

¶ 5. Parker sued Blumofe,[1] alleging medical malpractice. The trial court entered a scheduling order setting the deadline for naming expert witnesses. The order contained the following warning: "Failure to abide by this requirement may result in the expert not being allowed to testify at trial."

¶ 6. Blumofe filed an expert witness list by the deadline, but the list did not include an expert who would give testimony about the appropriate standard of care for a patient with Parker's presentation. After the deadline expired, Blumofe moved to enlarge the time to name expert witnesses who would testify on this topic. About a week later, Blumofe filed an amended expert witness list naming Dr. Alan Koslow as her standard-of-care expert.

¶ 7. Parker moved to bar Blumofe's standard-of-care expert from testifying. Parker also objected to Blumofe's motion to enlarge time because she failed to show that her failure to name an expert by the deadline was the result of excusable neglect, citing WIS. STAT. § 801.15(2)(a).

¶ 8. The court held a hearing on the motion. At the conclusion of the hearing, the court denied Parker's motion and allowed Blumofe to name Koslow as an expert witness, thereby implicitly granting Blumofe's motion to enlarge the time to name her expert. The case was tried and the jury heard Koslow testify that the treatment Blumofe provided Parker was consistent with the proper standard of care. The jury returned a verdict in favor of Blumofe. Parker filed a post-verdict motion requesting a new trial or judgment notwith

[1] Priscilla Parker also sued Beloit Clinic, S.C. and the Injured Patients & Families Compensation Funds. Both defendants were voluntarily dismissed from this lawsuit and therefore take no part in this appeal.

standing the jury verdict. The court denied Parker's motion and entered judgment dismissing Parker's action. Additional facts are provided as necessary below.

## DISCUSSION

### *Untimely Motion to Enlarge Deadline for Naming an Expert Witness*

██

¶ 9. Wisconsin circuit courts have inherent power, within the limits of their discretion, to control their dockets. *See Hefty v. Strickhouser*, 2008 WI 96, ¶ 31, 312 Wis. 2d 530, 752 N.W.2d 820. This power is also granted by statute. *Id.* Wisconsin Stat. § 802.10 addresses circuit court calendar management, establishing that a court "may enter a scheduling order on the court's own motion or on the motion of a party." WIS. STAT. § 802.10(3). The section sets forth several items a scheduling order may address, including "the identification and disclosures of expert witnesses, the limitation of the number of expert witnesses and the exchange of the names of expert witnesses." WIS. STAT. § 802.10(3)(f). Section 802.10(7) provides that a court may impose a sanction for a violation of a scheduling or pretrial order.[2]

---

[2] Wisconsin Stat. § 802.10 provides, as pertinent:

(3) SCHEDULING AND PLANNING. Except in categories of actions and special proceedings exempted under sub. (1), the circuit court may enter a scheduling order on the court's own motion or on the motion of a party. The order shall be entered after the court consults with the attorneys for the parties and any unrepresented party. The scheduling order may address any of the following:

(a) The time to join other parties.

(b) The time to amend the pleadings.

¶ 10. Consistent with its inherent and statutory powers to manage its docket, "[a] trial court has broad discretion in deciding how to respond to untimely motions to amend scheduling orders because that broad discretion is essential to the court's ability to manage its calendar." *Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, ¶ 29, 265 Wis. 2d 703, 666 N.W.2d 38.

---

(c) The time to file motions.

(d) The time to complete discovery.

(e) The time, not more than 30 days after entry of the order, to determine the mode of trial, including a demand for a jury trial and payment of fees under s. 814.61(4).

(f) The limitation, control and scheduling of depositions and discovery, including the identification and disclosures of expert witnesses, the limitation of the number of expert witnesses and the exchange of the names of expert witnesses.

(g) The dates for conferences before trial, for a final pretrial conference and for trial.

(h) The appropriateness and timing of summary judgment adjudication under s. 802.08.

(i) The advisability of ordering the parties to attempt settlement under s. 802.12.

(j) The need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions or unusual proof problems.

(k) Any other matters appropriate to the circumstances of the case, including the matters under sub. (5)(a) to (h).

. . . .

(7) SANCTIONS. Violations of a scheduling or pretrial order are subject to ss. 802.05, 804.12 and 805.03.

¶ 11. WISCONSIN STAT. § 801.15(2)(a) addresses motions to enlarge time periods.[3] When a motion to enlarge time is filed before the expiration of a deadline, "the court may order the period enlarged but only on motion for cause shown and upon just terms." WIS. STAT. § 801.15(2)(a). A "motion . . . made after the expiration of the specified time . . . shall not be granted unless the court finds that the failure to act was the result of excusable neglect." *Id.* "Excusable neglect" has been described as "that neglect which might have been the act of a reasonably prudent person under the same circumstances" and is "not synonymous with neglect, carelessness or inattentiveness." *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 468, 326 N.W.2d 727 (1982) (citation omitted).

¶ 12. Parker contends that the circuit court erred in failing to apply the excusable neglect standard set forth in WIS. STAT. § 801.15(2)(a) to Blumofe's untimely motion to name Koslow as an expert witness. The question whether the circuit court applied the appropriate legal standard in disposing of Blumofe's untimely motion to name an expert witness is a question of law, which we review de novo. *See Landwehr v. Landwehr*, 2006 WI 64, ¶ 8, 291 Wis. 2d 49, 715 N.W.2d 180.

---

[3] WISCONSIN STAT. § 801.15(2)(a) provides in full:

When an act is required to be done at or within a specified time, the court may order the period enlarged but only on motion for cause shown and upon just terms. The 90 day period under s. 801.02 [requiring service of a complaint within such period] may not be enlarged. If the motion is made after the expiration of the specified time, it shall not be granted unless the court finds that the failure to act was the result of excusable neglect. The order of enlargement shall recite by its terms or by reference to an affidavit in the record the grounds for granting the motion.

¶ 13. This dispute centers on the proper legal standard a circuit court is to apply to determine whether to grant a motion to extend the time for complying with a scheduling order. Parker maintains Wis. Stat. § 801.15(2)(a) is the proper legal standard; Blumofe argues that Wis. Stat. § 802.10 applies. While § 801.15(2)(a) contains no language explicitly limiting its applicability, nearly all published cases addressing the application of the excusable neglect standard of § 801.15(2)(a) have concerned time periods set by statute, rather than deadlines set by court order. *See, e.g. Estate of Otto v. Physicians Ins. Co. of Wis., Inc.*, 2008 WI 78, ¶¶ 23, 29, 311 Wis. 2d 84, 751 N.W.2d 805; *Hedtcke*, 109 Wis. 2d at 467–68; *Williams Corner Investors, LLC v. Areawide Cellular*, 2004 WI App 27, ¶¶ 10–12, 269 Wis. 2d 682, 676 N.W.2d 168. The lone case Parker cites that applied the excusable neglect standard to a court-ordered deadline, *Schneller v. St. Mary's Hospital*, 155 Wis. 2d 365, 455 N.W.2d 250 (Ct. App. 1990) (*Schneller I*), involved an untimely motion to amend a scheduling order, and would appear to support Parker's position. As we shall see, however, *Schneller I* was implicitly overruled in *Schneller v. St. Mary's Hospital*, 162 Wis. 2d 296, 306–07, 470 N.W.2d 873 (1991) (*Schneller II*).

¶ 14. The Schnellers, plaintiffs in a medical malpractice action, filed an untimely motion to enlarge the time to name a liability expert set by a scheduling order. *Schneller I*, 155 Wis. 2d at 368–69. The trial court denied the motion, determining that the Schnellers did not show that their failure to comply with the scheduling order was the result of excusable neglect under Wis. Stat. § 801.15(2)(a). *Id.* at 369. We affirmed the trial court, rejecting the Schnellers' argument that the ex-

cusable neglect standard applies only to motions to enlarge deadlines set by statute. *Id.* at 369–70.

¶ 15. The supreme court affirmed our decision in *Schneller I*, but did so using reasoning that implicitly rejected our analysis in *Schneller I*. While we held that the excusable neglect standard in Wis. Stat. § 801.15(2)(a) applied, the supreme court affirmed the trial court because it properly applied the lesser "cause" standard found in Wis. Stat. § 802.10(2) (1989–90), since repealed, *see* Sup. Ct. Order No. 95–04, 191 Wis. 2d xxi (1995). Specifically, the supreme court concluded that the trial court did not misuse its discretion in denying the Schnellers' motion because it "applied the proper standard of law by expressly finding that there was no *cause* for the Schnellers' failure to comply with the scheduling order." *Schneller II*, 162 Wis. 2d at 307 (emphasis added).

¶ 16. The *Schneller II* court explained: "The standards and procedures governing pretrial calendar orders appear in sec. 802.10, Stats." *Id.* The court noted that Wis. Stat. § 802.10(2) provided that "[a]ny order made under this section may on the court's own motion, or upon motion of a party for cause shown, be amended." *Id.* The court further noted that § 802.10(3)(d) (1989–90), also repealed by Sup. Ct. Order No. 95–04, provided that "[i]f at any time it appears that [a scheduling order deadline] cannot reasonably be met, the judge may amend the order upon timely motion of any party." *Id.* (citation omitted).

¶ 17. The *Schneller II* court ultimately treated the circuit court's denial of the Schnellers' untimely motion to name an expert witness as a sanction under § 802.10(7), which provides that the circuit court may issue sanctions for scheduling order violations, because the order, in effect, resulted in the dismissal of the

471

Schnellers' case. *Id.* at 308. The court sustained the circuit court's sanction of dismissal, concluding that "there was a reasonable basis for the court to determine that the Schnellers' counsel's conduct was egregious and without a . . . justifiable excuse." *Id.* at 312.

¶ 18. The court declared that "[t]he standards and procedures governing pretrial calendar orders appear in sec. 802.10, Stats," *Schneller II*, 162 Wis. 2d at 307, while the court of appeals stated in *Schneller I* that Wis. Stat. § 801.15(2)(a) provides the applicable standard by which a court must assess an untimely motion to enlarge a scheduling order deadline, *Schneller I*, 155 Wis. 2d at 371–72. Thus, the court of appeals' decision in *Schneller I* is in conflict with *Schneller II*.

■■

¶ 19. Accordingly, Parker's reliance on *Schneller I* is misplaced. Consistent with *Schneller II*, we conclude that the excusable neglect standard set forth in Wis. Stat. § 801.15(2)(a) does not apply to untimely motions to enlarge scheduling order deadlines. Rather, Wis. Stat. § 802.10 provides the "standards and procedures" courts apply to such motions. Moreover, requiring courts to evaluate untimely motions under the excusable neglect standard would infringe upon the circuit court's broad discretion in addressing untimely motions to amend scheduling orders. *See Teff*, 265 Wis. 2d 703, ¶ 29; *see also City of Sun Prairie v. Davis*, 226 Wis. 2d 738, 749–50, 595 N.W.2d 635 (1999) (courts have inherent authority to take actions that ensure their efficient and effective function). As the supreme court explained in *Schneller II*, 162 Wis. 2d at 310, such discretion "permits the court to take steps ranging from granting the requested relief to dismissing the moving party's case, [and] is absolutely essential to the court's ability to efficiently and effectively administer its calendar."

472

¶ 20. To decide the issue before us, we need not address whether the excusable neglect standard of Wɪs. Sᴛᴀᴛ. § 801.15(2)(a) applies to any other court-ordered deadlines, or otherwise more completely define the reach of that statute. We conclude only that the excusable neglect standard does not apply to the type of motion presented here, an untimely motion to enlarge a scheduling order deadline.

¶ 21. We observe that Parker does not argue that, if the excusable neglect standard does not apply, the trial court misused its discretion in permitting Blumofe to add an expert witness after the deadline expired. Thus, it is sufficient to say that under the facts presented, a reasonable judge could have either permitted or excluded Blumofe's late-named expert. Accordingly, we affirm the trial court in this respect.

### *Evidentiary Rulings*

¶ 22. Parker challenges three evidentiary rulings of the circuit court. Evidentiary determinations are subject to the erroneous exercise of discretion standard of review. *See State v. Nelis*, 2007 WI 58, ¶ 26, 300 Wis. 2d 415, 733 N.W.2d 619. "[C]ircuit courts have broad discretion to admit or exclude evidence, and we will upset their decisions only where they have erroneously exercised that discretion." *Id.* (citation omitted).

¶ 23. Some additional background is necessary to understand Parker's first evidentiary challenge. After Dr. Blumofe performed an aortic bypass to improve Parker's circulation to her extremities, Parker continued to have vascular problems. A test revealed that the

bypass was partially blocked with clots. At trial, Parker sought to make the case that Blumofe violated the standard of care by failing to refer Parker to a surgeon capable of performing a new bypass procedure. One of Blumofe's expert witnesses, Dr. Koslow, provided deposition and trial testimony regarding the advisability of a new bypass. In his deposition, Koslow explained that he believed that a second aortic bypass using Parker's common femoral arteries as the grafting site would have likely failed because the common femorals were too diseased. At trial, Koslow testified that Blumofe's decision not to refer Parker to another surgeon was correct because Parker was not a good candidate for a second bypass in the weeks following her first bypass because of an abdominal infection. Parker objected to the trial testimony on grounds that it was inconsistent with Koslow's prior deposition testimony. The trial court overruled Parker's objection.

¶ 24. On appeal, Parker renews her argument and speculates that Koslow changed his opinion because, after the deposition, a successful bypass surgery was performed using femoral arteries. In her view, Koslow's "shifting opinions" at trial denied her the opportunity to effectively cross-examine the witness at trial.

¶ 25. The problem with Parker's argument is that there was no inconsistency. First, Koslow did not assert during his deposition that the reason a second surgery was not called for was the diseased condition of Parker's femoral arteries. More importantly, Parker's inconsistency argument ignores the difference between common and profunda femoral arteries. Koslow's deposition comments referred specifically to Parker's *common* femoral arteries. However, *profunda* femoral arteries were used in Parker's later successful bypass. Koslow

474

did not offer an opinion regarding the condition of Parker's *profunda* femoral arteries.[4]

¶ 26. Parker next contends that the circuit court erroneously exercised its discretion in allowing Blumofe to testify as to the standard of care regarding her own conduct. According to Parker, this testimony should not have been permitted because Parker was denied the opportunity to depose Blumofe regarding these opinions, when, at Blumofe's deposition, Blumofe's attorney indicated that Blumofe would not give any standard-of-care testimony. In support of this argument, Parker cites a statement of Blumofe's counsel at Blumofe's deposition: "We don't intend to have [Dr. Blumofe] offer opinions in the case." It is apparent from the context of this statement, however, that Blumofe's counsel declared only that Blumofe would not be testifying about the standard of care applicable to other providers. Counsel did not indicate whether Blumofe would be offering an opinion as to her own standard of care. The circuit court was therefore within its discretion in allowing Blumofe to testify as to whether her treatment was consistent with the standard of care.

¶ 27. Finally, Parker complains about the trial court's decision to exclude the expert deposition testimony of Dr. Jon Wesley, one of Parker's treating physicians at UW Hospital. The trial court found there was

---

[4] Parker also argues that Koslow offered a new opinion at trial, namely, that there was no evidence that Parker's graft itself was infected. However, this was not a new opinion. At trial, Koslow stated only that the graft was occluded, and distinguished in his testimony Parker's case from those in which the graft was infected.

insufficient evidence that Dr. Wesley was qualified to give opinions about the vascular surgery issues in this case. Parker contends there was sufficient information about Dr. Wesley's qualifications. We conclude that the circuit court exercised appropriate discretion.

¶ 28. Admission of an expert witness's opinion testimony is a matter addressed to the discretion of the trial court. *Brain v. Mann*, 129 Wis. 2d 447, 458, 385 N.W.2d 227 (Ct. App. 1986). Under Wis. Stat. § 907.02, a person may give an opinion within his or her area of expertise as long as the witness is "qualified as an expert by knowledge, skill, experience, training, or education." *State v. Hollingsworth*, 160 Wis. 2d 883, 895, 467 N.W.2d 555 (Ct. App. 1991) (citation omitted). Whether a witness is qualified to provide expert testimony is a preliminary question of fact for the judge to determine under Wis. Stat. § 901.04. 7 Daniel Blinka, *Wisconsin Practice: Wisconsin Evidence* § 702.2, at 473 (2nd ed. 2001).

¶ 29. Here, while it is apparent from his deposition that Dr. Wesley was among Parker's treating physicians, the deposition contains no discussion of Dr. Wesley's training or specific expertise. Moreover, Dr. Wesley's curriculum vitae was not made a part of the deposition record. Finally, the proferred deposition testimony was cumulative to opinions already presented by at least two of Parker's other expert witnesses. We therefore conclude that the circuit court acted within its discretion in denying introduction of Dr. Wesley's deposition.

## CONCLUSION

¶ 30. In summary, we conclude that the trial court correctly declined to apply the excusable neglect stan-

dard when ruling on Dr. Blumofe's motion to extend the already expired deadline for naming expert witnesses. We further conclude that the circuit court acted within its discretion in allowing certain testimony of Dr. Koslow at trial, permitting Dr. Blumofe to testify as to the applicable standard of care, and excluding Dr. Wesley's deposition testimony. We therefore affirm.

*By the Court.*—Judgment affirmed.