**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**October 29, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP1907**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2018CV38**

**IN COURT OF APPEALS**
**DISTRICT IV**

RURAL MUTUAL INSURANCE COMPANY,

    PLAINTIFF-APPELLANT,

  V.

KUHN NORTH AMERICA, INC.,

    DEFENDANT-RESPONDENT.

        APPEAL from orders of the circuit court for Green County: JAMES R. BEER and THOMAS J. VALE, Judges. *Affirmed*.

        Before Fitzpatrick, P.J., Graham, and Nashold, JJ.

        ¶1    GRAHAM, J.  Rural Mutual Insurance Company (Rural) brought a negligence and products liability action against Kuhn North America, Inc. (Kuhn). Rural missed its court-ordered deadline for disclosing the lay witnesses it intended to call at trial.  Kuhn moved for summary judgment, arguing that without lay

witnesses, Rural could not prove its case. The circuit court granted Kuhn's summary judgment motion and denied Rural's motion for reconsideration.[1] We affirm the circuit court.

## BACKGROUND

¶2    Rural's insured was towing a piece of farm equipment when the equipment suffered a structural failure, causing an accident. Rural paid for the damages and then filed a complaint against Kuhn, the manufacturer, alleging that the accident was caused by a defect in the equipment's design. Kuhn denied the allegations and asserted that the structural failure had been caused by consumer misuse.

¶3    Shortly after the complaint was filed, Rural provided Kuhn with its insurance claim file. The file totaled ninety pages and contained what was represented to be all of the non-privileged information Rural had about the claim. Among other things, the file contained photographs, a police report from the accident, email correspondence about the claim, and a report from Rural's expert.

¶4    The court held a scheduling conference on October 30, 2018, and, at the outset, Rural's attorney volunteered to draft and file a proposed written order

---

[1] The Honorable James R. Beer presided over all proceedings in this matter through the summary judgment hearing and entered the order granting summary judgment. The Honorable Thomas J. Vale presided over the reconsideration hearing and entered the order denying reconsideration.

memorializing the deadlines set during the conference.[2]  The circuit court inquired about the status of the case, including witness disclosures.  Rural's attorney represented that he had already provided an expert report, but that he "would like an additional 30 days" to "get all [Rural's] lay witnesses" and for its expert to consider any amendments to the report.  Consistent with this request, the court ordered Rural to disclose its lay and expert witnesses by November 30, 2018.  The court also set a witness disclosure deadline for Kuhn, ordered that discovery would close June 2019 and that any dispositive motions must be filed by July 2019, and scheduled a final pretrial hearing for August 2019.  Rural's attorney drafted an order memorializing these deadlines, but he failed to file the order as promised.

¶5      Rural's November 30, 2018 witness disclosure deadline came and went, but Rural did not serve any document that purported to be a lay witness disclosure.  Rural's attorney later explained that he was relying on the existence of a written order to remind him of the deadline, and that his office never calendared the disclosure deadline because there was no written order.

¶6      In mid-February of 2019, Kuhn's attorney asked for an extension of Kuhn's upcoming disclosure deadline, and Rural's attorney agreed to this request.  At that same time, Kuhn's attorney realized that the original scheduling order had not been filed with the court.  He asked Rural's attorney to draft and file a revised

---

[2] As is common in judicial opinions, we frequently refer to the actions and statements of a party's attorney as if these actions and statements were those of the party itself.  In this opinion, however, we occasionally break from this convention when recounting specific representations made or actions taken by the parties' attorneys.  We take this unusual approach because, as discussed below, one of the assertions in Rural's brief is that its attorney is solely to blame for the conduct that resulted in the circuit court granting summary judgment in Kuhn's favor.

proposed order that reflected the extension of Kuhn's disclosure deadline and other amendments to the schedule that the attorneys had discussed. Despite multiple reminders, Rural's attorney did not take any steps to draft or obtain Kuhn's approval of a proposed order until early March. And when Rural's attorney finally did file it, he unilaterally inserted a provision that purported to resurrect and extend Rural's deadline to disclose its lay witnesses—an amendment that the attorneys had not discussed. Kuhn's attorney objected to this unilateral amendment of the proposed order they had agreed upon, and Rural's attorney took steps to vacate the order.[3]

¶7      Kuhn moved for summary judgment in July. By that time, 230 days had passed since Rural's witness disclosure deadline, Rural had not disclosed any lay witnesses, and its attorney had not sought approval from Kuhn or the circuit court for an enlargement of the deadline. In its summary judgment motion, Kuhn argued that Rural's time to disclose lay witnesses had long since passed, and that without lay witnesses, Rural could not prove its claims.

¶8      In response, Rural filed a motion asking the circuit court to enlarge its disclosure deadline or, in the alternative, to "declare" that it had already complied with the scheduling order by providing its claim file at the outset of the litigation. It also opposed summary judgment on the ground that Kuhn had not been prejudiced by its failure to disclose lay witnesses—according to Rural, Kuhn

---

[3] Specifically, Rural's attorney informed the court that he "noticed an error" in the proposed order, and he filed a replacement that did not extend Rural's witness disclosure deadline. Separately, the parties eventually agreed to the entry of a new scheduling order that gave Kuhn until July 5, 2019, to make its disclosures, and Kuhn met this deadline.

could have ascertained the identity of all of its witnesses by reading its claim file.[4] Finally, Rural argued that summary judgment was unwarranted because it did not need lay witnesses to meet its burden of proof at trial and could proceed solely on expert testimony.

¶9    The circuit court denied Rural's motion and granted Kuhn's motion. The court rejected the argument that Rural had complied with the witness disclosure order, stating that "[t]he Court did give an order and the Court's order was not followed." The court commented that Kuhn should not be expected to prepare for trial without knowing which witnesses Rural intended to call. The court stated that Rural's delay had been "egregious" and that "if disclosure had taken place on November 30th, 2018, like it was supposed to, we would probably be ready for trial, at least pretty close." And the court disagreed with Rural's argument that it could prove its case without lay witnesses, stating that "without lay witnesses you don't have a case." Rural filed a motion for reconsideration, and the court denied that motion.

## DISCUSSION

¶10    Broadly speaking, Rural advances two arguments in this appeal: that it complied with the circuit court's scheduling order by providing its claim file to Kuhn before its lay witness disclosure deadline; and that, even if Rural failed to comply with the scheduling order, the court erred by granting summary judgment

---

[4] In its brief opposing summary judgment, which was filed August 1, 2019, Rural identified seven individuals whose names could be found in the claim file, presumably intending to suggest that Kuhn would have been able to glean the names of these potential lay witnesses from the file. Although the parties appear to treat this list as Rural's untimely lay witness disclosure, Rural did not specifically represent that these were in fact the witnesses that it intended to call at trial.

5

in Kuhn's favor. Before turning to Rural's arguments, we first address the parties' dispute about the standard of review.

¶11    Kuhn asserts that the circuit court's decision to sanction Rural for its failure to comply with a scheduling order was "a discretionary exercise" and should be reviewed for erroneous exercise of discretion. Rural acknowledges that we "usually" review a decision to impose sanctions for erroneous exercise of discretion, but it contends that here, we should review the court's decision de novo "because the sanctions were imposed through the context of a summary judgment motion."

¶12    As we now explain, this appeal implicates four separate decisions made by the circuit court,[5] and each is governed by its own standard of review.

¶13    First, the circuit court determined that Rural failed to comply with the scheduling order, and that the disclosure of its claim file did not constitute compliance with that order. This decision appears to involve the application of undisputed facts to a legal standard, and in such circumstances, we apply a de novo standard of review. *See, e.g.*, ***Towne Realty, Inc. v. Zurich Ins. Co.***, 201 Wis. 2d 260, 267, 548 N.W.2d 64 (1996). We assume without deciding that the standard of review of the court's decision about compliance with the scheduling order is de novo.

---

[5] The circuit court did not expressly delineate its four separate decisions. However, each was at least implicitly made based on the motions that were pending before the court, and the court's ultimate determination to grant summary judgment to Kuhn on the grounds that Rural could not prove its case without lay witness testimony.

¶14     Second, the circuit court denied Rural's motion to enlarge its deadline to disclose witnesses. This is a discretionary decision, and we review it for erroneous exercise of discretion. *Schneller v. St. Mary's Hosp. Med. Ctr.*, 162 Wis. 2d 296, 305, 470 N.W.2d 873 (1991). Under that standard, we affirm the circuit court if it "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Hefty v. Strickhouser*, 2008 WI 96, ¶71, 312 Wis. 2d 530, 752 N.W.2d 820.

¶15     Third, the circuit court determined that, as a sanction for its violation of the scheduling order, Rural would not be allowed to offer any lay witness testimony at trial. This is also a discretionary decision, which we review for erroneous exercise of discretion. *See Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, ¶29, 265 Wis. 2d 703, 666 N.W.2d 38.

¶16     Finally, the circuit court concluded that Rural could not prove its case without presenting lay witness testimony, and it granted summary judgment on that basis. We review a grant of summary judgment de novo. *Park Bancorporation, Inc. v. Sletteland*, 182 Wis. 2d 131, 140, 513 N.W.2d 609 (Ct. App. 1994).

¶17     We now turn to the parties' arguments about the propriety of each of these four decisions.

## I.  The Circuit Court's Determination that Rural Violated the Witness Disclosure Order

¶18     Wisconsin circuit courts have inherent and statutory power, "within the limits of their discretion, to control their dockets" by entering scheduling orders to govern certain procedural aspects of a case. *Parker v. Wisconsin*

***Patients Comp. Fund***, 2009 WI App 42, ¶9, 317 Wis. 2d 460, 767 N.W.2d 272; *see also* WIS. STAT. § 802.10(3).[6]  Although there is no statutory lay witness disclosure requirement, courts have inherent authority to require such disclosures "to aid in the prompt and fair disposition of cases."  ***Carlson Heating, Inc. v. Onchuck***, 104 Wis. 2d 175, 180, 311 N.W.2d 673 (Ct. App. 1981).  By ordering parties to disclose lay witnesses, the court ensures that each litigant has notice of the opposing party's trial witnesses and can plan its trial strategy accordingly. *See, e.g.*, ***Saudi v. Valmet-Appleton, Inc.***, 219 F.R.D. 128, 134 (E.D. Wis. 2003) ("When one party does not disclose [its lay witnesses], the responding party cannot conduct necessary discovery, or prepare to respond to witnesses that have not been disclosed[.]").

¶19     Rural argues that it complied with the circuit court's scheduling order by providing its claim file.  That file contained the names of eleven individuals who were involved in one way or another with the claim, and Rural provided it to Kuhn shortly after the case was filed, long before Kuhn's witness disclosure deadline was set.  Although Rural acknowledges that the "better practice" would have been to provide a list of witnesses,[7] it argues that Kuhn should have been able to ascertain the information it needed from the claim file.  Kuhn counters that "[a] production of documents by a plaintiff does not tell the

---

[6] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[7] Rural repeatedly asserts that the circuit court imposed sanctions due to its "failure to *file* a written lay witness list."  But Rural points to nothing in the record suggesting that the court sanctioned it for its failure to *file* such a list.  Instead, the court sanctioned Rural for failing to obey its order to *disclose to Kuhn* the identities of the lay witnesses it intended to call at trial.  As the court explained, "How can counsel prepare [for trial] if they don't know who is being called? That's why we have scheduling orders."

defendant whom the plaintiff intends to call to satisfy its burden of proof, nor does it tell the defendant whom the plaintiff does *not* plan to call at trial."

¶20 We agree with Kuhn. The purpose of a witness disclosure requirement is to provide advance notice of all potential witnesses, and to prevent parties from wasting time and resources deposing, preparing to examine, and preparing to respond to witnesses whose testimony will not be presented at trial. Rural fails to explain how its ninety-page claim file fulfills this purpose. From the claim file, Kuhn might have been able to guess the names of some individuals that Rural might have been considering as potential trial witnesses, yet it would have no insight into whether Rural actually intended to present any of these individuals' testimony. Nor would it have insight into whether there were other individuals not identified in the claim file whose testimony Rural did intend to present. It was Rural's obligation to disclose its trial witnesses, and Rural does not explain why Kuhn should bear the burden of predicting, based solely on the claim file, which witnesses Rural was planning to call at trial.[8]

¶21 For these reasons, we agree with the circuit court that Rural violated the scheduling order by failing to timely disclose its lay witnesses.

---

[8] Rural first listed potential trial witnesses in its response to Kuhn's summary judgment motion, but since that filing, Rural has not been consistent about the individuals it intended to call as lay witnesses. In its argument before the circuit court, it asserted that the police report in the claim file "identified all of the witnesses that had any knowledge that Rural knew about this case and about the incident." Yet, in its summary judgment brief, it identified just four out of the six individuals named in the police report, as well as two other individuals not named in the police report but found elsewhere in the claim file. Now, on appeal, Rural whittles this list down to five. Rural's inconsistency on this topic even now illustrates why witness disclosures are an important tool that courts use "to aid in the prompt and fair disposition of cases." *Carlson Heating, Inc. v. Onchuck*, 104 Wis. 2d 175, 180, 311 N.W.2d 673 (Ct. App. 1981).

## II.  The Circuit Court's Denial of
## Rural's Motion to Amend the Scheduling Order

¶22     We now turn to Rural's argument that the circuit court should have granted its motion to amend the scheduling order and enlarge its witness disclosure deadline.  Rural filed its motion months after the deadline had elapsed, and courts have "broad discretion" in determining "how to respond to untimely motions to amend scheduling orders."  *Teff*, 265 Wis. 2d 703, ¶29.

¶23     Rural asserts that the circuit court erroneously exercised its discretion because it applied the wrong legal standard.  According to Rural, the court erroneously exercised its discretion under *Parker*, 317 Wis. 2d 460, by denying the motion based on Rural's inability to show excusable neglect.  Rural argues that "cause shown" is the proper standard for a motion to amend a scheduling order, and that it has met that standard.  There are several problems with this argument.

¶24     First, Rural's argument misreads our decision in *Parker*.  There, we faced a situation that was opposite of the situation that we address today:  the circuit court *granted* an untimely motion to extend a witness disclosure deadline, and on appeal, Parker argued that the court erroneously exercised its discretion by enlarging the deadline *without* making a finding of excusable neglect.  *Parker*, 317 Wis. 2d 460, ¶¶11-21.  We considered WIS. STAT. § 801.15(2)(a), which provides that a court cannot extend certain deadlines unless it finds that the "failure to act was the result of excusable neglect."  However, we determined that the requirements of § 801.15(2)(a) do not apply to any request to enlarge a deadline set by scheduling order.  *Parker*, 317 Wis. 2d 460, ¶13.  As we explained, a prohibition on granting such motions without a showing of excusable neglect

10

"would infringe upon the circuit court's broad discretion in addressing untimely motions to amend" its own scheduling orders. *Id.*, ¶19.

¶25    Accordingly, *Parker* demonstrates that it is within a circuit court's discretion to enlarge a court-ordered scheduling deadline *even if* it has not found excusable neglect. Nothing in *Parker* constrains the factors a circuit court may consider when it determines whether to grant an untimely motion to amend a scheduling order. Nor does *Parker* suggest that the court errs if it considers whether a party's neglect was excusable when it exercises its broad discretion to deny such a motion.[9]

¶26    We now turn to Rural's argument that "cause shown" is the applicable standard for a motion to enlarge a deadline in a scheduling order that has already expired. Rural cites *Schneller*, 162 Wis. 2d 296, as the source of that standard, without recognizing that there are reasons to question whether this portion of *Schneller* remains good law.[10] We need not decide whether "cause

---

[9] Rural may also be misreading the circuit court's reasoning in this case. Rural points to the fact that the circuit court asked twice about "excusable neglect." However, it is not clear from the transcript that these questions were directed at the court's consideration of Rural's motion to enlarge its deadline, and the court's inquiries were also material to a different decision it had to make. As we explain in Section III below, in determining whether to impose sanctions, the court had to determine whether Rural's violation of the scheduling order was without "clear and justifiable excuse," a standard which is at least conceptually related to whether Rural's "neglect" was "excusable."

To the extent that the circuit court's decision to deny Rural's motion to amend the scheduling order was functionally equivalent to its decision to exclude lay witness testimony, it is an appropriate exercise of discretion for the reasons explained in Section III of this opinion.

[10] Rural is correct that *Schneller* applied the "cause shown" standard, but the reason it applied that standard is because it was explicitly set forth in the applicable statute at the time *Schneller* was decided. *See Schneller v. St. Mary's Hosp. Med. Ctr.*, 162 Wis. 2d 296, 307-08, 470 N.W.2d 873 (1991) (applying the "cause shown" standard articulated in the then-current version of WIS. STAT. § 802.10(3)(b) (1989-90)). The statutory language *Schneller* relied on has since been repealed. *See* Sup. Ct. Order No. 95-04, 191 Wis. 2d xxi (1995); *Parker*, 2009 WI
(continued)

shown" continues to be the correct standard for this context because, even if it is, Rural does not make any persuasive argument that it should have prevailed under that standard. Rural argues that it showed cause because Kuhn already "had the information regarding the lay witnesses"—an argument we have already rejected. As *Parker* teaches, circuit courts have broad discretion in this area, and Rural fails to persuade us that the only appropriate exercise of discretion was to accept the arguments in the untimely motion.

¶27 For all of these reasons, we reject Rural's arguments and conclude that it was within the circuit court's discretion to deny Rural's motion to enlarge its disclosure deadline.

### III. The Circuit Court's Decision to Sanction Rural by Excluding its Lay Witness Testimony

¶28 The next issue is whether the circuit court erroneously exercised its discretion when it prohibited Rural from offering lay witness testimony as a sanction for its failure to timely disclose lay witnesses. Circuit courts have statutory and common law authority to sanction a party for failure to comply with a scheduling order.[11] Here, because the court's decision ultimately resulted in the dismissal of Rural's case, we evaluate it as a dismissal sanction. *See Schneller*,

---

App 42, ¶15, 317 Wis. 2d 460, 767 N.W.2d 272 (noting that the statutory language at issue in *Schneller* has been repealed). The current version of § 802.10 does not expressly provide any standard for evaluating a motion to amend a scheduling order.

[11] *See* WIS. STAT. § 802.10(7) (providing statutory authority to sanction a party for "[v]iolations of a scheduling or pretrial order"); WIS. STAT. § 804.12(2)(a) (providing that those sanctions may include, among other things, "an order prohibiting the disobedient party from introducing designated matters in evidence" or an order "dismissing the action or proceeding"); *Schneller*, 162 Wis. 2d at 310 (stating that Wisconsin courts "have repeatedly recognized that the court has the discretion to dismiss the case as a sanction" for noncompliance with a scheduling order).

12

162 Wis. 2d at 308 (when a sanction barring plaintiffs from calling an essential witness had "the severe effect of causing the ultimate dismissal" of the case, our supreme court evaluated it as a "dismissal of an action as a sanction for a party's failure to comply with court orders").

¶29 The parties disagree about the legal standards that apply to the circuit court's decision to sanction Rural by barring it from presenting lay witness testimony. Kuhn argues that the circuit court appropriately exercised its discretion based on the standards set forth in *Carlson Heating* and *Schneller*. As explained in *Carlson Heating*, courts "must have the authority to require each side to reveal in a timely manner the names of their lay witnesses in order to aid in the prompt and fair disposition of cases before them." *Carlson Heating*, 104 Wis. 2d at 180. And as explained in *Schneller*, circuit courts should "discourage protraction of litigation and [] 'refuse [the courts'] aid to those who negligently or abusively fail to prosecute the actions which they commence.'" *Schneller*, 162 Wis. 2d at 314 (quoting *Trispel v. Haefer*, 89 Wis. 2d 725, 733, 279 N.W.2d 242 (1979) (brackets in original)). Collectively, these cases hold that a sanction that results in the dismissal of a party's case will be affirmed if there is a reasonable basis for determining that the noncomplying party's conduct was "egregious" and there was no "clear and justifiable excuse" for the noncompliance." *Schneller*, 162 Wis. 2d at 311; *see also Carlson Heating*, 104 Wis. 2d at 181.[12]

---

[12] *Carlson Heating* does not specifically mention that a noncomplying party's conduct must be "egregious" to warrant a sanction resulting in dismissal. But to the extent that the standard that we stated in *Carlson Heating* differs from the standard our supreme court stated in *Schneller* (which does require egregious conduct), *Schneller* must control. *See, e.g.*, *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

¶30 We conclude that *Carlson Heating* and *Schneller* set forth the applicable legal standards because they directly address the situation in this case: review of a sanction that was imposed by a circuit court for noncompliance with a scheduling order, and that ultimately resulted in the dismissal of the noncomplying party's case. In *Carlson Heating*, the plaintiff failed to timely disclose its lay witnesses, and the circuit court sanctioned the plaintiff by barring it from presenting any lay witness testimony at trial. *Carlson Heating*, 104 Wis. 2d. at 177. And, because the allegations could not be proved without lay witnesses, the court dismissed the complaint. *Id.* Likewise, in *Schneller*, the plaintiffs failed to name an essential expert witness by the court-ordered witness disclosure deadline. *Schneller*, 162 Wis. 2d at 302-03. The circuit court denied the plaintiffs' motion to enlarge the deadline and barred them from introducing expert testimony at trial as a sanction. *Id.* at 304. It then granted the defendants' motion for summary judgment because the plaintiffs could not prove their case without an expert witness. *Id.* at 304-05. Thus, both *Carlson Heating* and *Schneller* specifically address whether the court erred by imposing what amounted to a sanction of dismissal for a party's failure to timely disclose witnesses. *Carlson Heating*, 104 Wis. 2d at 181; *Schneller*, 162 Wis. 2d at 304.

¶31 Having determined that the legal standards from *Carlson Heating* and *Schneller* govern our review, we now apply them to the circuit court's exercise of discretion in this case. The question is whether the circuit court appropriately exercised its discretion, not whether we would have imposed the same sanction if we were exercising the discretion that is reserved for the circuit court. *See State ex rel. Newspapers, Inc. v. Circuit Court for Milwaukee Cnty.*, 124 Wis. 2d 499, 509, 370 N.W.2d 209 (1985). We will affirm the circuit court's decision if there is a "reasonable basis" to determine that Rural's conduct was

14

"egregious" and that there was no "clear and justifiable excuse" for its noncompliance.

¶32    We conclude that there was a reasonable basis to determine that Rural's conduct was egregious.  The circuit court noted the extreme length of time that had passed since the deadline, which it calculated as 244 days.  This delay was considerably longer than the forty-seven-day delay in *Carlson Heating* or the sixty-six-day delay in *Schneller*.  *See Carlson Heating*, 104 Wis. 2d at 181; *Schneller*, 162 Wis. 2d at 303-04.  Rural contends that the cause of the delay was its failure to file a written order memorializing the court's oral decisions on scheduling; yet, even after learning of this mistake, Rural was slow to take corrective action.  It did not file any written scheduling order for several weeks, nor did it seek an extension of its disclosure deadline at that time.  And, when Rural did eventually file a proposed scheduling order after numerous reminders from Kuhn, it attempted to unilaterally modify the form of the proposed order to extend its own disclosure deadline.  Based on the record, it appears that Rural never requested any extension from Kuhn,[13] nor did it request an extension from the court or serve anything that could be characterized as a witness disclosure until months later, after Kuhn filed its motion for summary judgment.

¶33    Rural cites *Dane County DHS v. Mable K.*, 2013 WI 28, ¶70, 346 Wis. 2d 396, 828 N.W.2d 198 for the proposition that egregiousness may only be found if conduct is "extreme, substantial and persistent."  It argues that, without an

---

[13] Rural asserts, without citation to the record, that its attorney "sought acquiesce [sic] in getting another date," and that Kuhn objected.  As stated above, the record does not show that Rural ever asked Kuhn for an extension.  It appears that what Rural is referring to is its attorney's attempt to modify the proposed order to extend Rural's own deadline without consulting Kuhn, and Kuhn's attorney's objection to that questionable practice.

analysis of whether Rural's conduct met that standard, the circuit court's ruling was an erroneous exercise of discretion. This argument fails for at least two reasons. First, **Mable K.** does not suggest that conduct must be extreme, substantial, and persistent to be egregious—it merely states that conduct fitting this description can properly be considered egregious. **Id.**, ¶70. Second, there is a reasonable basis in the record to determine that Rural's conduct was extreme, substantial, and persistent. The multiple examples of Rural's dilatory conduct discussed above, especially in the face of repeated reminders from Kuhn, could support such a determination by the circuit court.

¶34 The circuit court stated that it "rarely grants" motions such as Kuhn's, but that it did so here based on its determination that Rural's conduct was "egregious," had "delayed the trial,"[14] and had "flaunted the Court's order for an orderly trial." Based on the record before us, there is a reasonable basis for the circuit court's finding of egregious conduct.[15]

¶35 We also conclude that there is a reasonable basis to determine that there was no "clear and justifiable excuse" for Rural's noncompliance. Rural argued that its conduct was excusable because it was due to "a clerical type error

---

[14] Rural asserts that this finding is erroneous because the court had not yet scheduled the trial date and so "there was no trial to delay." We disagree. As explained above, Rural compromised Kuhn's ability to timely prepare for trial by failing to identify the lay witnesses it intended to call, and this may well have delayed the trial. In any event, there was no need for Kuhn to demonstrate that the trial had been delayed. Under **Schneller**, a sanction of dismissal for noncompliance can be appropriate if conduct is egregious, even if there is no delay. **Schneller**, 162 Wis. 2d at 315 ("[Parties] are not at liberty to flaunt [a scheduling] order and expect to not be penalized because they believe no delay or prejudice will result from the violation.").

[15] To the extent that these facts go beyond those expressly considered by the circuit court, we may nevertheless consider them, because we "will search the record for reasons to sustain the circuit court's discretionary decision." **State v. Thiel**, 2004 WI App 225, ¶26, 277 Wis. 2d 698, 691 N.W.2d 388.

on [its] end." But even assuming that is a justifiable excuse for the initial error, it only explains why Rural failed to initially file the scheduling order as promised. It does not excuse Rural's inaction and continued delay after Kuhn had brought the error to Rural's attention, and Rural points us to nothing in the record that would excuse this later conduct.

¶36 Because there was a reasonable basis to determine that Rural's conduct was "egregious" and without "clear and justifiable excuse," we conclude that the circuit court properly exercised its discretion under the standards set forth in *Carlson Heating* and *Schneller*. We turn now to Rural's remaining arguments on this issue and explain why they are unavailing.

¶37 First, Rural argues that we should follow a different line of cases, including *Fredrickson v. Louisville Ladder Co.*, 52 Wis. 2d 776, 191 N.W.2d 193 (1971) and *Magyar v. Wisconsin Health Care Liab. Ins. Plan*, 211 Wis. 2d 296, 564 N.W.2d 766 (1997), which sets forth different legal standards. This line of cases provides that a party seeking the exclusion of witness testimony based on "unfair surprise" must make a showing of prejudice, and that the preferred remedy is to grant a continuance. *Magyar*, 211 Wis. 2d at 302-04; *Fredrickson*, 52 Wis. 2d at 783-84. Rural argues that the circuit court erred by failing to apply these standards, but, as we now explain, *Fredrickson* and *Magyar* are inapt.

¶38 To be sure, *Fredrickson* and *Magyar* both considered whether undisclosed witness testimony should have been excluded, but, unlike here, the question was whether the court properly excluded relevant testimony under what

is today WIS. STAT. § 904.03.[16] That statute provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice…." *See* § 904.03. Neither *Fredrickson* nor *Magyar* was decided based on the court's authority to sanction egregious noncompliance with a scheduling order under WIS. STAT. § 802.10(7), *Carlson Heating*, or *Schneller*. And, in fact, *Magyar* expressly differentiates between these situations and standards. 211 Wis. 2d at 308 n.1. In a footnote, the *Magyar* court cited *Schneller* for the proposition that the exclusion of a witness as a sanction depends on whether there was "egregious noncompliance that lacks a clear and justifiable excuse," not whether the party seeking the sanction was prejudiced. *Id.* As the court explained, the *Schneller* standard was not applicable in *Magyar* because the record did not suggest that the witness had been excluded as a sanction. *Id.*

¶39 According to Rural, "Kuhn argued prejudice as the basis for its motion," and therefore, "Wisconsin law on prejudice applies – *Magyar applies* – *Fredrickson applies* – and Wis. Stat. § 904.03 applies." This argument fails for at least two reasons. First, it incorrectly characterizes the record. Kuhn asked the court to bar lay witness testimony as a sanction for noncompliance with a scheduling order, not based on § 904.03 or any prejudice it suffered as a result of the delay. Although Kuhn did argue that it had been prejudiced, it made this argument primarily in response to the position Rural took in its briefing. That is, Kuhn argued that *even if* the circuit court accepted Rural's position that this case was governed by the legal standards set forth in *Fredrickson* and *Magyar*, Kuhn

---

[16] *Magyar* was decided under WIS. STAT. § 904.03, *see* 211 Wis. 2d 296, 303-08, 564 N.W.2d 76 (1997), while *Fredrickson* was decided under the common law predecessor to that statute, *see* 52 Wis. 2d 776, 783, 191 N.W.2d 193 (1971) (applying a model rule of evidence that had been adopted by Wisconsin courts).

had satisfied that standard. Second, Rural fails to explain how Kuhn could transform its motion for sanctions into a motion to exclude evidence based on § 904.03 simply by arguing that it had been prejudiced.

¶40    Rural relies on *Jenzake v. City of Brookfield*, 108 Wis. 2d 537, 322 N.W.2d 516 (Ct. App. 1982) for the proposition that Kuhn was "required" to seek a continuance to ameliorate any potential prejudice. We disagree. In *Jenzake*, the circuit court denied the defendant's motion to sanction the opposing party for violating a statute governing discovery, and this court affirmed the circuit court's exercise of discretion. *Id.* at 545. In so doing, we discussed *Fredrickson* at length, *id.* at 542-43, and we stated that a party seeking sanctions "must make a record showing how the concealment unfairly affects the party's ability to adequately try the case and must request a continuance, unless it is felt a continuance is unworkable," *id.* at 545. But as we have already determined, the legal standards set forth in *Fredrickson* do not govern this case. To the extent that the *Jenzake* opinion can be read to suggest otherwise, it cannot survive our supreme court's subsequent guidance in *Schneller* and *Magyar*. *See Schneller*, 162 Wis. 2d at 314 (a court's decision to exclude witness testimony as a sanction for violating a scheduling order "is not dependent on a showing that the opposing party has been actually prejudiced by the delay"); *see also supra* ¶38 (discussing *Magyar*, 211 Wis. 2d at 308 n.1).

¶41    Second, Rural appears to argue that the circuit court's sanction was too harsh, citing various Wisconsin authorities for the general proposition that a sanction that ultimately results in dismissal should rarely be granted. *See e.g.*, *Alexander v. Riegert*, 141 Wis. 2d 294, 300, 414 N.W.2d 636 (1987); *Trispel*, 89 Wis. 2d at 733. We agree with Rural that such sanctions should not be granted under ordinary circumstances—this is reflected in the standard set forth in

*Schneller*, which requires egregious conduct that has no clear and justifiable excuse. But, as explained above, once a circuit court has made its discretionary decision to impose such a sanction, it is not our place to determine whether we would have made the same decision. We will reverse only if there is not a reasonable basis for the sanction, and in this case, we have concluded that there was a reasonable basis.

¶42    Finally, Rural cites the lead opinion in *Industrial Roofing Servs. v. Marquardt*, 2007 WI 19, ¶61, 299 Wis. 2d 81, 726 N.W.2d 898, and it argues in passing that the circuit court erred by "imputing the conduct of counsel to a blameless client." To the extent that the lead opinion in *Industrial Roofing* is precedential authority for the proposition that a blameless client should not be sanctioned with dismissal, it also explains that even if a client is "not itself directly to blame for [its counsel's] failures, it does not follow that [the client] is without fault." *Id.*, ¶64. And, as the opinion went on to explain, the client's fault in that case was "its failure to act in a reasonable and prudent manner when it knew or had reason to know that its attorney was failing to properly manage the case." *Id.*

¶43    Rural did not develop an argument about the proper application of *Industrial Roofing* in the circuit court, nor does it meaningfully develop such an argument on appeal.[17] It asserts that it "advised" the circuit court "of the law on this point," but at most, Rural referenced *Industrial Roofing* in a single sentence

---

[17] Rural cites *Industrial Roofing*, 2007 WI 19, 299 Wis. 2d 81, 726 N.W.2d 898, in a single paragraph toward the end of its opening appellate brief, and it does not mention the case at all in its reply. Its appellate argument on this issue merely asserts in conclusory fashion that the circuit court should not have dismissed the case because it was "advised" that "blame rests with counsel, not Rural Mutual." *Cf. Bank of Am. NA v. Neis*, 2013 WI App 89, ¶46 n.9, 349 Wis. 2d 461, 835 N.W.2d 527 (concluding that the appellant's one-paragraph argument addressing a complex issue was insufficiently undeveloped).

at the close of its brief opposing summary judgment. Then, during the hearing, Rural's attorney queried, "How can we fix this so that Rural Mutual who is without blame here, you know, for its counsel's failure to provide the initial scheduling order … [can have its] day in court?" The attorney made this comment without citing to any authority or suggesting that it was asking the court to make any particular determination about Rural's culpability.

¶44 As a general rule, when a party fails to raise an issue before the circuit court with enough specificity to allow the circuit court to correct any potential error, the party forfeits that issue on appeal. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177; *State v. Torkelson*, 2007 WI App 272, ¶25, 306 Wis. 2d 673, 743 N.W.2d 511. Although forfeiture "is a rule of judicial administration" and we have discretion to overlook it, *State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702, there are good reasons to apply the rule in many cases. The forfeiture rule "enable[s] the circuit court to avoid or correct any error with minimal disruption of the judicial process, eliminating the need for appeal." *State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 (footnote omitted). It also "gives both parties and the circuit court notice of the issue and a fair opportunity to address the objection," "encourages attorneys to diligently prepare for and conduct trials," and "prevents attorneys from 'sandbagging' opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal." *Id.*

¶45 If Rural believed that Wisconsin law required the circuit court to make a finding that it was at fault before dismissing its complaint, it was incumbent upon Rural to advise the court that such a finding was required, and to present something more than a conclusory assertion that the attorney was alone to

blame for one of the many errors that occurred in this case. We conclude that Rural forfeited any argument based on *Industrial Roofing* by failing to develop it in the circuit court, and also that Rural failed to meaningfully develop any such argument on appeal.

## IV. The Circuit Court's Decision to Grant Summary Judgment

¶46   We turn to Rural's final argument—that the circuit court should not have granted summary judgment because, even without lay witness testimony, it could still meet its burden of proof at trial.

¶47   Rural contends that it could prove its case based solely on the testimony of its properly disclosed expert witnesses. It explains that this is a products liability case, and that the key questions revolve around the design of the product and whether any defect in the design caused the accident. Rural asserts that its expert witnesses can testify about the condition of the farm equipment that failed, and that Rural "was entitled to its day in court to prove its case through its expert witnesses."

¶48   Rural does not cite any authority for the extraordinary proposition that a plaintiff advancing a tort claim can prove its case by expert testimony alone, and we are not persuaded by its arguments. Even assuming its expert witnesses could supply all the necessary testimony about the condition of the damaged equipment, Rural does not explain how they would be able to offer competent and admissible testimony about any of the other facts that are material to this case. For example, it is not clear what facts Rural's experts could introduce to show that Kuhn is the party that bears liability for any damages, or the amount of those damages. To the extent the experts are aware of facts that are relevant to these elements of Rural's claims, their testimony on these matters would presumably be

inadmissible hearsay. *See, e.g.*, ***State v. Weber***, 174 Wis. 2d 98, 107, 496 N.W.2d 762 (Ct. App. 1993) ("Hearsay data upon which the expert's opinion is predicated may not be automatically admitted into evidence by the proponent and used for the truth of the matter asserted unless the data are otherwise admissible under a recognized exception to the hearsay rule."). Rural does not explain how it could meet its burden to prove its case without admissible evidence about these basic facts and others like them.

¶49    In its reply brief, Rural advances another extraordinary position—that the circuit court should have taken judicial notice of the background facts that Kuhn's expert assumed to be true in his report. Because Rural makes this argument for the first time its reply brief, we need not address it. *See **A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) ("It is inherently unfair for an appellant to withhold an argument from its main brief and argue it in its reply brief because such conduct would prevent any response from the opposing party.") We note, however, that a court may take judicial notice of facts only if they are "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." WIS. STAT. § 902.01(2). Rural fails to explain how the facts that Kuhn's expert assumed to be true fall into either of these categories. Requiring the circuit court to take judicial notice of facts assumed to be true by a defendant's expert would appear, on its face, to contravene the fundamental principle that a civil plaintiff bears the initial burden to come forward with evidence to prove its claims. *See **Zillmer v. Miglautsch***, 35 Wis. 2d 691, 700, 151 N.W.2d 741 (1967) (noting that "the plaintiff in a tort case does have the burden of proof" and must "come forward with evidentiary facts that establish the ultimate facts").

23

¶50   Accordingly, we conclude that the circuit court did not err by granting summary judgment based on Rural's inability to prove its case without lay witness testimony.

## CONCLUSION

¶51   For all these reasons, we conclude that the circuit court did not err by determining that Rural violated the witness disclosure order, nor did it err by denying Rural's motion to amend the scheduling order, by barring Rural from introducing lay witness testimony, or by granting summary judgment to Kuhn. Accordingly, we affirm the circuit court.

*By the Court.*—Orders affirmed.

Not recommended for publication in the official reports.