COURT OF APPEALS
DECISION
DATED AND FILED

April 14, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP403**

Cir. Ct. No. **2021CV80**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

SCOTT M. PETTIT AND STACY L. PETTIT,

    PLAINTIFFS-APPELLANTS,

  V.

MERRILL ICE DRAGGERS, INC.,

    DEFENDANT-RESPONDENT.

---

APPEAL from orders of the circuit court for Lincoln County: GALEN BAYNE-ALLISON, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Scott and Stacy Pettit appeal orders denying their motion to amend a scheduling order, granting summary judgment to Merrill Ice

Draggers, Inc. ("MID"), and denying reconsideration of those decisions. The Pettits argue that the circuit court: (1) applied an improper legal standard when denying their motion to amend the scheduling order; (2) granted MID summary judgment based on an erroneous interpretation of the scheduling order; and (3) erroneously denied their motion for relief from the orders, pursuant to WIS. STAT. § 806.07 (2023-24),[1] by improperly treating that motion as a motion for reconsideration. We reject the Pettits' arguments and affirm.

¶2      MID also requests costs, including attorney fees, pursuant to WIS. STAT. RULE 809.25. Because MID has not filed a motion seeking attorney fees based on a frivolous appeal and has not developed any argument that the Pettits' entire appeal is frivolous, we deny its request for attorney fees. *See* RULE 809.25(3)(a); ***Howell v. Denomie***, 2005 WI 81, ¶9, 282 Wis. 2d 130, 698 N.W.2d 621. We do, however, award MID costs under RULE 809.25(1)(b).

## BACKGROUND

¶3      The Pettits own real property along Lake Alexander in the Town of Merrill, Wisconsin. Every year in January and February, MID holds automobile "ice drag races" on the frozen surface of Ullman's Bay on Lake Alexander. The Pettits' property is located along a portion of the bay on which these races occur. When these races occur, MID sets up a racing area that consists of "a spectator section, a pit area, a four-lane racetrack, and a slow-down area," and MID surrounds the racing area with snow fencing. MID also sets up a ticket booth trailer and charges spectators $15 for admittance.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

¶4 On June 4, 2021, the Pettits filed this action against MID, alleging a private nuisance and trespass and requesting leave to seek abatement of a public nuisance. The Pettits also sought a declaration "acknowledging that [the Pettits] own title to a portion of the lakebed of Lake Alexander, subject to the public trust doctrine." They further sought to restrain MID "from charging an admission fee for any events held on the frozen surface of Lake Alexander" and "from impeding third-parties['] use and enjoyment of Lake Alexander." Finally, the Pettits sought an injunction preventing MID from holding drag races "on the portion of Lake Alexander beneath which [the Pettits] hold[] legal title to the lakebed."

¶5 Following MID's answer, the circuit court held a scheduling conference on September 14, 2021, and it issued a scheduling order that included the following deadlines: the Pettits had until April 29, 2022, to disclose expert witnesses and until July 29, 2022, to disclose lay witnesses; MID had until July 29, 2022, to disclose both expert and lay witnesses; both parties had until October 11, 2022, to conduct discovery; and the parties had to complete alternative dispute resolution ("ADR") by September 1, 2022. The scheduling order also included a provision for dispositive motions as follows: "Dispositive motions shall be filed no later than **N/A**. There shall be 30 days for response and 15 days for rebuttal."

¶6 On October 5, 2021, the Pettits filed an "Exhibit A," which had been referred to in, but inadvertently omitted from, their complaint. Following its response to the Pettits' filing, MID served interrogatories, requests for admission, and requests for production to the Pettits, who responded on October 18, 2021. From October 2021 until April 2022, the record does not show that any further activity occurred between the parties, and as MID asserts on appeal—and the Pettits do not contest—the Pettits served no discovery requests on MID.

3

¶7      On April 27, 2022, two days before the Pettits' deadline to disclose expert witnesses, the Pettits' counsel sent an email to MID's counsel requesting a 60-day extension for both parties to disclose expert and lay witnesses. The Pettits' counsel wrote that he had spoken with "the Court" and that there was a "good likelihood" that the case would be reassigned to a new judge. Counsel further wrote that he would file a letter with the circuit court upon learning whether MID's counsel would agree or disagree with the deadline extensions. The Pettits' counsel also sought to schedule depositions and ADR, and he informed MID's counsel that he had a two-day trial beginning the following day.

¶8      MID's counsel responded that seven and one-half months had passed since the circuit court issued its scheduling order and that he was unsure how or why the judicial reassignment impacted the case. Nevertheless, MID's counsel agreed to extend the Pettits' deadline to disclose expert witnesses to May 9, 2022. It appears that MID's counsel did not agree to extend the deadline to disclose lay witnesses, given his response that "[a]ny extension beyond [the May 9 extension] will require some explanation of why we need to delay this case, or else a motion to the Court." There is nothing in the record showing that the Pettits' counsel filed any letter with the court noting the agreed-upon extension for expert witnesses or MID's counsel's disagreement with extending the lay witness deadline. The Pettits ultimately never filed their witness disclosures.

¶9      In June 2022, the Pettits' counsel had three conversations with the circuit court judge's judicial assistant to discuss how to proceed with the case, and he informed MID's counsel of those conversations. The Pettits' counsel also informed MID's counsel that he would be filing a motion "to have a new scheduling order unless [the parties] could reach a stipulation to the contrary." MID's counsel responded that he would oppose any amendment to the scheduling

order. The Pettits' counsel did not file a motion for a new scheduling order until September 28, 2022.

¶10 On July 29, 2022, MID filed its disclosure of lay witnesses, noting that it did not disclose its expert witnesses because the Pettits had not disclosed any expert witnesses, despite having been granted an extension of their deadline to do so.

¶11 On August 5, 2022, MID's counsel sent an email to the Pettits' counsel, noting their earlier discussion about ADR and proposing two mediators for ADR. On August 11, 2022, MID's counsel provided the Pettits' counsel with the mediators' available dates. On August 17, 2022, MID followed up on the August 11 email, asking the Pettits' counsel to review the provided dates and to advise whether any of the dates worked for counsel. MID again followed up on August 24, 2022. The Pettits' counsel never responded to any of these emails.

¶12 Around August 15, 2022, the case was reassigned from the Honorable Robert R. Russell to the Honorable Galen Bayne-Allison. Following the reassignment and communications between the parties' counsel and Judge Bayne-Allison's judicial assistant, a scheduling hearing was set for September 29, 2022. On September 1, 2022, MID's counsel wrote to the judicial assistant and to the Pettits' counsel, noting that he would dispute changes to the scheduling order deadlines that had already passed.

¶13 On September 28, 2022, the day before the hearing, the Pettits formally moved to amend the September 2021 scheduling order, citing the grounds for doing so in their counsel's letter to the circuit court and his affidavit. The Pettits' counsel stated that he "incurred a health set-back" in December 2021 that had persisted throughout 2022 and had caused him to be out of the office for a

5

significant amount of time. He also stated that the parties had not conducted any discovery and had not completed ADR. The Pettits' counsel additionally stated that "[e]arlier this year," Judge Russell's judicial assistant had informed him "it was highly probable" the case would be reassigned to a new judge, and she advised that "it would make the most sense to have the new presiding Court official amend the dates in the Scheduling Order."

¶14 At the hearing the following day, MID's counsel argued that the Pettits' counsel had not informed him of his health issues, that discovery had been conducted, that they received discovery responses from the Pettits' counsel, and that he had been "attempting for months" to schedule ADR without any response from the Pettits' counsel. MID's counsel also stated his intent to file a summary judgment motion based on the discovery received and the Pettits' failure to disclose witnesses, and he stated that MID "would like to move forward with that motion, and get that scheduled." MID's counsel objected, however, "to starting from scratch with a new schedul[ing] order."

¶15 The circuit court then asked the Pettits' counsel to explain "what has been going on that there has simply been no compliance with the deadlines, and no request to the Court for relief from the deadlines." The Pettits' counsel responded that he spoke with Judge Russell's judicial assistant with the intent to amend the scheduling order, and the judicial assistant informed him that the case would likely be reassigned; that he discussed this information with MID's counsel; and that he decided to seek amendment of the scheduling order with the new judge. The Pettits' counsel also responded that this action was not one that "gives rise to summary judgment very easily" and that very little discovery had been done. He argued that he was asking for "a reset of what we need to do" and that it made "sense to do that in the interest of justice."

¶16 The circuit court also noted that the Pettits had two attorneys appearing on their behalf, and it asked counsel to explain why the second attorney had not pursued the action. The Pettits' counsel responded that "it was just a very difficult year with the pressure business that we had. Given the fact that we didn't have a trial date here. We did not pursue this case." Noting again his health issues and his conversation with the judicial assistant about the possibility of a reassignment, the Pettits' counsel repeated that it "made the most sense" not to seek an amendment until the new judge was assigned. The Pettits' counsel further added that it was important to "get the case going," that discovery needed to be conducted, that ADR had not been scheduled, and that "there is going to be dispositive motions, you know, put those on the calendar too."

¶17 The circuit court held the motion in abeyance, noting that it would "speak to Judge Russell and see what information was communicated by him to his [j]udicial [a]ssistant." It further told the parties that they could provide additional written submissions on the issue of amending the scheduling order by October 6, 2022, and that it would "follow up" with the parties.

¶18 On October 3, 2022, MID filed its summary judgment motion seeking dismissal of the Pettits' claims. On October 6, 2022, the parties filed letters with the circuit court on the motion to amend the scheduling order. In support of MID's submission on the issue of amending the scheduling order, MID's counsel filed an affidavit relating his communications with the Pettits' counsel regarding the deadline extension for disclosing witnesses and attempts to schedule mediation and also noting that the Pettits' counsel never mentioned to him that health issues impeded his ability to file the witness disclosures. MID's counsel further attached a list of cases from the Wisconsin Circuit Court Access website showing that the Pettits' counsel made appearances in 26 new cases

between September 2021 and September 2022 and that the only months in which he did not make a new appearance during that timeframe were January, March, and July. MID also sought immediate scheduling of its summary judgment motion "via a briefing schedule and hearing date, without any further discovery or disclosure of expert witnesses."

¶19 In his written submission regarding the scheduling order, the Pettits' counsel argued that "any inaction was in large part and almost exclusively due to … health set-backs" and that his decision not to move to amend the scheduling order sooner was due to his discussions with two judicial assistants and the case's reassignment. He recounted his April 27, 2022 conversation with Judge Russell's judicial assistant and stated that he "had a more serious health event" shortly thereafter that caused him "to miss an even greater amount of time in" May and June 2022.

¶20 The Pettits' counsel then described a conversation he had with a different judicial assistant on July 25, 2022. Counsel stated that this assistant informed him that the case would "most likely be assigned to [Judge Bayne-Allison]," and counsel then asked her "to advise if Judge Russell wanted to provide us any further instructions." Because he did not receive any response, the Pettits' counsel stated that he "made a judgment call to hold off on filing a motion until it was decided the case would either be reassigned or stay with Judge Russell."

¶21 The Pettits' counsel also acknowledged that MID had filed a summary judgment motion, but counsel stated that he would be "requesting time to conduct discovery prior to responding to that motion" and that he would be contacting opposing counsel to schedule that discovery. The record does not,

however, contain any documents showing that these actions occurred. Moreover, the record contains no response to MID's summary judgment motion between the October 6, 2022 letter from the Pettits' counsel and a January 3, 2023 letter from MID seeking a decision from the circuit court.[2] MID sought a decision on both the Pettits' motion to amend the scheduling order and MID's summary judgment motion, given the Pettits' lack of any response.

¶22 On January 27, 2023, the circuit court issued written decisions denying the Pettits' motion to amend the scheduling order and granting MID's summary judgment motion. In its scheduling order decision, the court found that the Pettits' counsel's health issues had not prevented him from practicing law between October 2021 and May 2022, given his April 2022 extension request, his multiple conversations with Judge Russell's judicial assistant regarding how to proceed, and the fact that there were two attorneys appearing on behalf of the Pettits. The court also found that the Pettits' counsel knew that he had failed to follow the scheduling order deadlines and, given his multiple conversations with the judicial assistants, that he repeatedly considered filing a motion to amend the scheduling order between May 2022 and September 2022 but ultimately chose not to do so.

¶23 The circuit court further noted that the Pettits' counsel had "repeatedly suggested that it would not have made sense or somehow been inefficient to address a motion for relief from the order to Judge Russell" due to

---

[2] The parties had scheduled depositions of some of MID's witnesses for February 15, 2023. At a February 3, 2023 hearing, MID's counsel explained that he spoke with the Pettits' counsel either in December 2022 or January 2023 and scheduled those depositions as a "professional courtesy, in the event that … this case was not dismissed."

the possible reassignment of the case. Yet, the court continued, the Pettits' counsel waited 41 days after the case was reassigned to seek relief. The court thus concluded that the Pettits' counsel's ongoing failure to seek relief until September 28, 2022, was unreasonable.

¶24 For these reasons, the circuit court concluded that the Pettits' counsel had not provided a clear and justifiable excuse for failing to comply with the scheduling order and that counsel's conduct in failing to comply with the scheduling order was "egregious." As a result, the court denied the motion to amend the scheduling order. The court further concluded that dismissal of the Pettits' complaint, which was further addressed in its summary judgment decision, was an appropriate sanction, pursuant to WIS. STAT. § 805.03, for the Pettits' counsel's failure to comply with the scheduling order and his failure to respond to the summary judgment motion.

¶25 In its summary judgment decision, the circuit court noted the case's procedural history, the September 2021 scheduling order deadlines for filing responses to dispositive motions, and the Pettits' lack of a response to MID's summary judgment motion. Relying on the evidence provided in MID's summary judgment motion, the court granted MID summary judgment on the Pettits' nuisance and trespass claims and on their request for injunctive relief, and it dismissed the Pettits' claim for declaratory relief. The court did not discuss the sanction mentioned in its scheduling order decision, but the scheduling order decision acknowledged that dismissal was a "harsh sanction." Nevertheless, the court concluded the sanction was appropriate, given the Pettits' counsel's conduct and "the necessity of ensuring the decent and good conduct of attorneys and respect for and compliance with the court's orders."

¶26    On February 2, 2023, the Pettits filed a letter with the circuit court seeking to vacate both of the court's decisions.  Regarding the summary judgment decision, the Pettits argued that the September 2021 scheduling order did not address summary judgment proceedings because they were listed as "N/A."  They further argued that MID had not followed the correct summary judgment procedure.  Regarding the scheduling order decision, the Pettits again raised the Pettits' counsel's health issues, the fact that "there was not much communication from [MID]'s legal counsel," and the fact that the case was reassigned.  The letter included as attachments two proposed orders vacating the court's decisions.

¶27    On February 3, 2023, the circuit court held a hearing during which it set a briefing schedule for the parties to address the issues in the Pettits' letter and set a date for an oral ruling.  After briefing concluded on March 31, 2023, the court wrote to the parties on June 6, 2023, stating that it had removed the oral ruling from its calendar because it had made a decision that was adverse to the Pettits and that it would "file a written decision within the next couple of weeks."  On January 19, 2024, both parties wrote the court noting that the court had not yet issued a decision.

¶28    On February 12, 2024, the circuit court issued its decision, construing the Pettits' request to vacate as a motion for reconsideration.  The court concluded that its "failure to act in a way consistent with [the Pettits'] anticipation or expectation but not inconsistent with the law cannot constitute a manifest error of law."  The court further concluded that the dispositive motions provision in the September 2021 scheduling order was not ambiguous, and while the September 2021 scheduling order never set a deadline for filing dispositive motions, it plainly did not, nor could not, disallow dispositive motions.  Because the Pettits had not met the reconsideration standard, the court denied their reconsideration motion.

¶29    The Pettits now appeal.  Additional facts will be provided below as necessary.

## DISCUSSION

¶30    On appeal, the Pettits argue that the circuit court failed to apply the proper legal standard when it refused to amend the initial scheduling order, that their failure to respond to MID's summary judgment motion was due to the court's lack of direction and its erroneous interpretation of the scheduling order, and that the court erroneously construed their request to vacate as a motion for reconsideration.  We review a circuit court's decisions on motions to amend the scheduling order and motions for reconsideration for an erroneous exercise of discretion.  *See **Schneller v. St. Mary's Hosp. Med. Ctr.***, 162 Wis. 2d 296, 305, 470 N.W.2d 873 (1991); ***Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, LTD.***, 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853.  We uphold the court's discretionary decision if it "has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." ***Schneller***, 162 Wis. 2d at 306.

¶31    We review a circuit court's summary judgment decision de novo, applying the same methodology as the circuit court.  *See **AKG Real Est., LLC v. Kosterman***, 2006 WI 106, ¶14, 296 Wis. 2d 1, 717 N.W.2d 835.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2).

12

**I. The Motion to Amend the Scheduling Order**

¶32    The Pettits first argue that although the circuit court cited the proper standard for motions to amend scheduling orders, it failed to apply that standard because it did not address the interests set forth in *Alexander v. Riegert*, 141 Wis. 2d 294, 414 N.W.2d 636 (1987).  They further contend that the court based its decision on an error of law because the court described one of the Pettits' counsel's conversations with the judicial assistant as an "attempted ex parte communication with the court," but communication with a judicial assistant is not considered an ex parte communication with the court.

¶33    WISCONSIN STAT. § 802.10(3) provides that a circuit court may enter a scheduling order on its own motion or on a party's motion, and it must be entered "after the court consults with the attorneys for the parties."  The scheduling order may address, for example, "[t]he time to file motions" and "[t]he appropriateness and timing of summary judgment adjudication."  Sec. 802.10(3)(c), (h).  Violations of the scheduling order are subject to WIS. STAT. §§ 802.05, 804.12, 805.03, and 895.044.  Sec. 802.10(7).  Section 802.10, however, contains no language addressing requests for amending deadlines in a scheduling order.

¶34    MID contends that the excusable neglect standard in WIS. STAT. § 801.15(2)(a) applies to untimely motions to amend a scheduling order.  This court has previously concluded, however, that the excusable neglect standard does not apply to untimely motions to enlarge scheduling order deadlines.  *See Parker v. Wisconsin Patients Comp. Fund*, 2009 WI App 42, ¶¶19-20, 317 Wis. 2d 460, 767 N.W.2d 272.

¶35    Rather, when addressing an untimely motion to amend a scheduling order, a circuit court exercises "broad discretion," *see Schneller*, 162 Wis. 2d at 310, which is "[c]onsistent with its inherent and statutory powers to manage its docket," *Parker*, 317 Wis. 2d 460, ¶10, and is "absolutely essential to the court's ability to efficiently and effectively administer its calendar," *Schneller*, 162 Wis. 2d at 310. A court's broad discretion to address untimely motions to amend a scheduling order thus allows it "to take steps ranging from granting the requested relief to dismissing the moving party's case." *Schneller*, 162 Wis. 2d at 310. Our supreme court in both *Schneller* and *Alexander* addressed the concerns a circuit court should consider when exercising this broad discretion.

¶36    *Alexander* involved "a successor attorney who was unable to present plaintiffs' case properly due to a prior attorney's judgment or decisions which may have been at least influenced by a real or apparent conflict of interest." *Alexander*, 141 Wis. 2d at 300. In that case, our supreme court concluded that the circuit court had denied the plaintiffs the right to "the single-minded representation of an advocate devoted exclusively to their interests" by denying their motion to amend the scheduling order. *Id.* at 298-99. In so concluding, the court explained that when considering a motion to amend a scheduling order, a circuit court must "balance the integrity of the scheduling order reflecting the court's calendar" and the defendant's completed trial preparation against the plaintiff's right to present his or her case. *See id.* at 299-300.

¶37    Our supreme court further explained this balancing test in *Schneller* by noting a circuit court's primary concern when considering an untimely motion to amend a scheduling order. That concern "is on accommodating the conflicting interests in permitting parties to fully present their case, in preventing prejudice to the opposing party, and in deterring litigants from flaunting court orders and

interfering with the orderly administration of justice." *Schneller*, 162 Wis. 2d at 310.

¶38 We conclude that the circuit court did not erroneously exercise its broad discretion by denying the Pettits' untimely motion to amend the scheduling order because it appropriately considered the concerns noted in *Alexander* and *Schneller*. The court found that the Pettits' counsel's health issues did not prevent him from entirely practicing law between October 2021—when the Pettits responded to MID's discovery requests—and May 2022—when the Pettits missed their extended deadline to disclose their expert witnesses. The court found that during that period, the Pettits' counsel sought an extension from MID's counsel, had a two-day trial in April 2022, and had a second attorney on the case.

¶39 The circuit court further found that, based on his conversations with court staff after May 2022 about the possibility that the case would be reassigned, the Pettits' counsel affirmatively chose to do nothing after contemplating whether to move to amend the scheduling order. The court considered the significant length of time that had passed and counsel's ongoing failures to seek to amend the scheduling order at any point during that time. From these considerations, the court reasonably concluded that the Pettits' counsel's health issues and his (unconfirmed) belief that the case would likely be reassigned were insufficient and unreasonable excuses for missing the scheduling order deadlines and for not seeking to amend the scheduling order before the deadlines passed. The court properly balanced the Pettits' right to present their case with the integrity of the court's scheduling order and, in this instance, that balance weighed in favor of not amending the original scheduling order. The Pettits' counsel's failure to do anything to prosecute this case consistent with the existing scheduling order

supports the court's exercise of discretion in denying the motion to amend that order.

¶40 As for the "attempted ex parte communication," the circuit court did not base its decision on a conclusion that contacting a judicial assistant was, in fact, an ex parte communication. Rather, the court faulted the Pettits' counsel's choice of words when describing his July 25, 2022 conversation with the judicial assistant, in which he asked her "to advise if Judge Russell wanted to provide us any further instructions" on how to proceed with the case. The court merely found that the Pettits' counsel had not made a prior agreement with MID's counsel regarding that contact. Accordingly, the Pettits' counsel's reliance on such a conversation to determine whether to comply with an existing scheduling order was inherently unreasonable.

¶41 The circuit court explained that attorneys normally agree in advance that one of them "will approach the Court regarding a case either to advise the Court of some development or seek an answer to a specific, agreed-on question." The court found that the July 25, 2022 conversation was not such an instance of agreement between attorneys and that the Pettits' counsel had instead "attempted an ex parte communication with the Court" by seeking direct instruction from Judge Russell about how to proceed without consulting MID's counsel. It further added, "Wisely, [the judicial assistant] or the Court ignored [the Pettits' counsel's] improper approach."

¶42 Thus, the circuit court did not base its decision on a conclusion that the Pettits' counsel's communication with the judicial assistant was an "ex parte communication." Rather, the court pointed out that counsel had not accurately described the July 25, 2022 conversation with the judicial assistant. This fact

ultimately contributed to the court's overall finding that the Pettits' counsel had unreasonably decided to do nothing to seek relief from the scheduling order, given that following the July 25, 2022 conversation, the Pettits' counsel "made a judgment call to hold off on filing a motion" because he had not received any further instructions. In short, the court's comment regarding an "attempted ex parte communication" by the Pettits' counsel did not constitute an error of law.[3]

## II. The Scheduling Order and Summary Judgment

¶43 Although the Pettits challenge the circuit court's summary judgment decision, they do not take issue with the substance of that decision (with one exception addressed below). Rather, they raise two arguments relating to their failure to respond to MID's summary judgment motion, contending that the court prematurely addressed the merits of any possible summary judgment.

---

[3] While discussing the motion to amend the scheduling order, the circuit court additionally stated that a dismissal through its grant of summary judgment was a sanction under WIS. STAT. § 805.03 for the Pettits' counsel's violation of the scheduling order. MID argues that we should not view the court's summary judgment grant as a sanction. Rather, MID contends that the court granted summary judgment "based on the merits of MID's motion and submissions" and that "dismissal on summary judgment was simply the natural and logical consequence of [the Pettits'] inexcusable neglect in prosecuting the case [they] filed."

It is immaterial that the circuit court described its summary judgment grant as a "sanction" because it did not, in fact, issue that decision directly as a sanction. Instead, the court thoroughly addressed the merits of the Pettits' claims with the (limited) available evidence (including the Pettits' complaint and their responses to MID's discovery requests) and, based on that evidence, granted summary judgment because there was "no genuine issue as to any material fact." *See* WIS. STAT. § 802.08(2). We agree with MID that this context, while a direct result of the Pettits' failure to engage in discovery and otherwise prosecute their claim, the court's summary judgment decision was simply the application of summary judgment principles, not a "sanction." Therefore, we need not determine whether the court further erroneously exercised its discretion by effectively dismissing the Pettits' case as a sanction resulting from their counsel's failure to comply with the scheduling order. *See Schneller v. St. Mary's Hosp. Med. Ctr.*, 162 Wis. 2d 296, 308, 470 N.W.2d 873 (1991).

¶44 First, the Pettits argue that the circuit court failed to "follow up" with the parties after they submitted their October 6, 2022 letters regarding the motion to amend the scheduling order, as the court said it would at the September 29, 2022 hearing. The Pettits contend that the court "gave the parties a roadmap, failed to live up to that roadmap by promptly addressing the scheduling order," and then blamed the Pettits "for the uncertainty created in the interim by the [circuit] court not abiding by its own instructions." They appear to assert that the court's failure to issue a decision on the scheduling order and its failure to issue a briefing schedule for the summary judgment motion necessarily led to the Pettits' failure to respond to MID's summary judgment motion.

¶45 We disagree. At the September 29, 2022 hearing, the circuit court told the parties that they could provide additional written submissions on the issue of amending the scheduling order by

> the close of business next Thursday [October 6, 2022], because I want to make a decision by then, and I want my [j]udicial [a]ssistant to get on the horn with the two of you, and get a trial date. And, *to the extent the Court is going to enter a scheduling order*, get new dates so we can get this moving, and get this done.

(Emphasis added.) The court then stated that following the attorneys' submissions, "the Court will follow up with you gentlemen." Although the court did not issue a decision on the scheduling order until January 2023, there is nothing in the court's language implying that a new scheduling order would be issued or that the September 2021 scheduling order was no longer applicable. The only date the court wanted to set was a trial date and, *to the extent* that the court would grant the Pettits' motion, set new dates.

¶46    The fact that the circuit court did not issue its decision until January 2023 did not mean the Pettits were free to ignore the September 2021 scheduling order and not respond to MID's summary judgment motion. The Pettits acknowledged MID's intent to file a summary judgment motion both at the September 29, 2022 hearing and in their October 6, 2022 letter. Yet, the Pettits did nothing in the time between MID's October 2022 summary judgment motion and the court's January 2023 decision. That they did not receive direction from the court is not a reason for failing to respond to the motion. Furthermore, as MID points out, if the Pettits were confused about scheduling, "a reasonable, prudent attorney would have sought clarification regarding the briefing schedule, requested an enlargement of the deadline, or filed *something*" during that time. Even after MID filed its January 3, 2023 letter seeking a decision from the court and noting that the motion was unopposed, the Pettits *still* did not file anything in response. They cannot now blame the court for their own extensive lack of action.

¶47    Second, the Pettits argue that the scheduling order was ambiguous as to summary judgment motions because the provision on dispositive motions was marked "N/A." Again, that provision stated: "Dispositive motions shall be filed no later than **N/A**. There shall be 30 days for response and 15 days for rebuttal." According to the Pettits, the fact that the provision was marked "N/A" meant that the entire provision did not apply to the case. They contend that the circuit court erroneously interpreted the provision in its decision denying reconsideration because it changed the provision's language by "striking through" the first sentence and applying the second sentence. The Pettits further assert that the provision is ambiguous because "it is not possible to discern whether the prior judge's intention would have been to strikethrough (or delete) just the first sentence, or the full section."

19

¶48     We conclude that the circuit court did not erroneously interpret the dispositive motions provision. The court noted that the "N/A" appeared only in the first sentence of the provision, "which deals with a specific deadline for filing of dispositive motions, of which summary judgment is one." The court correctly explained that absent a different deadline in a scheduling order, the statutory time in WIS. STAT. § 802.08(1) by which to file a summary judgment motion controlled. The court then noted that the provision's second sentence dealt "with the timing of subsequent pleadings by the parties after one or the other files a dispositive motion and requires the other party respond to any such filing within 30 days." Looking at the provision as a whole, the court explained that the provision contained "two clauses separated by a period which control, when applicable, different deadlines relating to dispositive motions."

¶49     The circuit court concluded that the second sentence was not surplusage if the court did not "establish a specific, non-statutory deadline for [the] filing of any dispositive motion" because it still provided "specific guidance to the parties on the time for response and reply if and when a dispositive motion [was] filed." We fully agree with this interpretation. The court further explained that the provision would not be rendered ambiguous if it simply stated: "Dispositive motions. There shall be 30 days for response and 15 days for rebuttal." In other words, the meaning of the provision would remain the same if the scheduling order were written with the "N/A" or if it were written as the court suggested.

¶50     There is nothing ambiguous about the dispositive motions provision in the scheduling order. It is clear that there were no deadlines for filing

dispositive motions other than those provided by statute, such as the summary judgment deadlines in WIS. STAT. § 802.08.[4]  The remaining responsive deadlines were also clear: 30 days for response and 15 days for rebuttal.  Thus, once MID filed its summary judgment motion, the Pettits had 30 days to respond.

¶51  The Pettits fault the circuit court for not promptly issuing a decision on their motion to amend the scheduling order, arguing that "taking more than thirty (30) days to resolve the issue gives rise to an inference the summary judgment briefing dates would be modified after the court ruled on the motion to amend the scheduling order."  They further contend that the court could have notified the parties that it would be applying the 30-day deadline in the scheduling order, that it did not inform the parties that it would be deciding the summary judgment motion, and that it did not "communicate its expectations of the parties."

¶52  As we have already noted, the scheduling order deadlines were clear, and there was nothing preventing the Pettits from seeking clarification from the circuit court if they were confused about those deadlines.  The fact that the court did not act promptly is not an excuse for the Pettits' own failure to take any action.  Because the Pettits do not raise any arguments regarding the substance of the court's summary judgment decision,[5] we conclude that the court did not err by granting summary judgment in favor of MID.

---

[4] Although the Pettits argued in their motion for reconsideration in the circuit court that MID had not followed the correct summary judgment procedure in WIS. STAT. § 802.08(2), they do not renew that argument on appeal.  Therefore, we do not address the applicability of § 802.08 further.

[5] The only argument the Pettits raise with respect to the substance of the circuit court's decision, which relates to the court's conclusion regarding the public trust doctrine, is in their request for discretionary reversal pursuant to WIS. STAT. § 752.35, which we deny.  *See infra* ¶59 n.7.

**III. Reconsideration**

¶53     The Pettits next argue that the circuit court erroneously exercised its discretion by treating their request to vacate the court's decisions discussed above as a motion for reconsideration, rather than a motion to vacate the decisions pursuant to WIS. STAT. § 806.07. The Pettits assert that their February 2, 2023 letter clearly stated that they sought to vacate the court's decisions, that their proposed orders included the word "vacated," and that their brief on the issue included "conjugate versions" of the word "vacated." They further contend that their failure to respond to MID's summary judgment motion was due to "mistake, inadvertence, surprise, or excusable neglect," *see* § 806.07(1)(a), because they "had no idea the Court was considering the summary judgment motion" and they "were waiting for the Court to give direction on scheduling." They also appear to contend that the court's alleged failures in regard to scheduling entitle them to relief under § 806.07(1)(g) and (h), but they do not further develop that argument.

¶54     A reconsideration motion must "present either newly discovered evidence or establish a manifest error of law or fact." ***Koepsell's Olde Popcorn Wagons***, 275 Wis. 2d 397, ¶44. A manifest error "is not demonstrated by the disappointment of the losing party," but, rather, it is shown by "the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" ***Id.*** (citation omitted). In contrast, a motion for relief from a judgment or an order must state one of the grounds in WIS. STAT. § 806.07(1)(a)-(h), some of which must be raised within a specified time period. *See* § 806.07(1)-(2). Those grounds include "[m]istake, inadvertence, surprise, or excusable neglect"; that "[i]t is no longer equitable that the judgment should have prospective application"; and "[a]ny other reasons justifying relief from the operation of the judgment." Sec. 806.07(1)(a), (g), (h).

22

¶55    The problem with the Pettits' arguments is that neither their letter nor their circuit court briefs mentioned WIS. STAT. § 806.07 or argued any of the grounds for relief under that statute. Mere use of the word "vacate" alone does not invoke the statute, at least not given the context at issue in this case. Given the contents of the Pettits' letter and their briefs, we conclude that the circuit court reasonably construed their request as a motion for reconsideration.

¶56    First, the Pettits' February 2, 2023 letter stated their belief that the circuit court's summary judgment decision was "an error of law." The letter reiterated the Pettits' argument that the scheduling order did not address summary judgment motions, and it contended that MID had failed to follow the correct summary judgment procedure under WIS. STAT. § 802.08(2). The letter then discussed the court's decision on amending the scheduling order, again restating the Pettits' counsel's health issues, the reassignment of the case, and the belief that their reasons for not seeking relief from the scheduling order were "reasonable under the circumstances." At no point in the letter did the Pettits mention WIS. STAT. § 806.07 or any of its grounds for relief, and the attached proposed orders did not state any statutory grounds for "vacating" the court's decisions but, rather simply stated that the court's decisions were "vacated." If the court had granted a motion for reconsideration, the previously entered orders would have been functionally "vacated."

¶57    Second, the Pettits' circuit court brief reiterated their summary judgment arguments regarding the "N/A" in the scheduling order and the dispositive motions provision's ambiguity, and it reiterated their arguments on why they had not sought to amend the scheduling order. The only new argument in the brief was that a newly assigned judge normally issues a new scheduling order pursuant to WIS. STAT. § 801.58(2) and that all dates were taken off the

23

calendar after reassignment. The Pettits' reply brief restated the same arguments, despite MID's response brief expressly arguing that the Pettits had *not* argued they were entitled to relief under WIS. STAT. § 806.07. Again, there is nothing in either of the Pettits' briefs raising—much less clearly so—§ 806.07 or arguing any of its grounds for relief.

¶58    The Pettits' letter and their briefs simply asked the circuit court to reevaluate the decisions it had already made based either on a manifest error of law or fact. Thus, the court reasonably construed their pleadings as a motion for reconsideration. They cannot now argue that the court erred by misconstruing their pleadings and applying an incorrect standard on different grounds when they failed to raise those grounds. Consequently, we conclude that the Pettits forfeited their WIS. STAT. § 806.07 arguments. *See State v. Gee*, 2019 WI App 31, ¶39, 388 Wis. 2d 68, 931 N.W.2d 287 ("[A]rguments raised for the first time on appeal are generally deemed forfeited." (citation omitted)); *see also State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 (explaining that the forfeiture rule "gives both parties and the circuit court notice of the issue and a fair opportunity to address the objection" and prevents "sandbagging" by "failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal").[6]

¶59    The Pettits' only argument addressing the circuit court's reconsideration analysis is in their reply brief and is in the form of a brief,

---

[6] Even if we considered the Pettits' undeveloped WIS. STAT. § 806.07 arguments, they offer no reasonable excuse for failing to respond to MID's summary judgment motion that could constitute "[m]istake, inadvertence, surprise, or excusable neglect." *See* § 806.07(1)(a). Nor do their complaints regarding the circuit court's alleged failures entitle them to relief under either § 806.07(1)(g) or (h).

conclusory statement that "the manifest error of law as to the alleged ex parte communication would warrant relief." Because the Pettits' argument is raised for the first time in their reply brief, we decline to consider it on that basis. *See A.O. Smith Corp. v. Allstate Ins.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) (stating that the court of appeals generally does not consider arguments raised for the first time in a reply brief).[7]

## IV. Costs

¶60    MID requests costs, including appellate attorney fees, pursuant to WIS. STAT. RULE 809.25.    MID argues that RULE 809.25(1)(b)5. allows "a prevailing party to tax any '[o]ther costs as directed by the court [of appeals],' including the prevailing party's appellate attorney's fees."[8]  It contends that "[t]he dissolute motivations underlying this appeal and the captive nature in which MID continues to incur legal expenses" justify "that MID's attorney's fees be taxable as costs if it prevails."

---

[7] The Pettits also ask us to reverse the circuit court's orders pursuant to our discretionary reversal power under WIS. STAT. § 752.35, based on the combined effect of the ambiguous scheduling order, the Pettits' counsel's health issues, the reassignment of the case, the court's delay in deciding the motion to amend the scheduling order, and the court issuing a summary judgment decision without signaling its intentions as to briefing.  Pursuant to that statute, we may reverse a circuit court's order or judgment "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." *Id.*

However, we exercise our discretionary reversal power "sparingly and only in the most exceptional cases." *State v. Klapps*, 2021 WI App 5, ¶31, 395 Wis. 2d 743, 954 N.W.2d 38 (2020) (citation omitted).  Because we reject all of the Pettits' arguments, we conclude this is not an exceptional case warranting the exercise of our discretionary reversal power.

[8] MID cites *Sheely v. DHSS*, 150 Wis. 2d 320, 339, 442 N.W.2d 1 (1989), in support of this proposition, but that case does not address the statutory provision under which MID seeks attorney fees.

¶61 WISCONSIN STAT. RULE 809.25(1)(a)1. allows for costs against the appellant "when the appeal is dismissed or the judgment or order affirmed." The allowable costs are set forth in RULE 809.25(1)(b) and include "[o]ther costs as directed by the court." RULE 809.25(1)(b)5. Those costs do not include attorney fees. Attorney fees, however, are recoverable under RULE 809.25(3) if we conclude that the entire appeal is frivolous. RULE 809.25(3)(a); *see Howell*, 282 Wis. 2d 130, ¶9. Further, a motion seeking attorney fees based on a frivolous appeal must "be filed no later than the filing of the respondent's brief." RULE 809.25(3)(a).

¶62 Here, MID has not filed a motion seeking attorney fees based on a frivolous appeal, and it does not develop an argument that the Pettits' entire appeal is frivolous. Thus, MID is not entitled to attorney fees. It is, however, entitled to costs pursuant to WIS. STAT. RULE 809.25(1)(b).

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.